THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AYOUB HAJI MAMET,
    Detainee, Camp Iguana,
    Guantanamo Bay Naval Station
    Guantanamo Bay, Cuba;

ADEL ABDUL HAKIM,
    as Next Friend of Ayoub Haji Mamet;
    and

AHMAD DOE and AKTAR DOE,
    Detainees, Camp Iguana,
    Guantanamo Bay Naval Station
    Guantanamo Bay, Cuba;

USAMA HASAN ABU KABIR,
    as Next Friend of Ahmad Doe and
    Aktar Doe;

*Petitioners/Plaintiffs,*

      v.

GEORGE W. BUSH,
    President of the United States
    The White House
    1600 Pennsylvania Ave., N.W.
    Washington, D.C. 20500,

DONALD RUMSFELD,
    Secretary, United States
    Department of Defense
    1000 Defense Pentagon
    Washington, D.C. 20301-1000;

ARMY BRIG. GEN. JAY HOOD,
    Commander, Joint Task Force – GTMO
    JTF-GTMO
    APO AE 09360; and

ARMY COL., MIKE BUMGARNER
    Commander, Joint Detention
    Operations Group - JTF-GTMO,
    JTF-GTMO
    APO AE 09360,

*Respondents/Defendants.*

Case No.

**PETITION FOR A WRIT OF
HABEAS CORPUS AND
COMPLAINT SEEKING
DECLARATORY AND
INJUNCTIVE RELIEF**

No. _____

## PETITION FOR A WRIT OF HABEAS CORPUS AND
## COMPLAINT SEEKING DECLARATORY AND INJUNCTIVE RELIEF

Petitioners Ayoub Haji Mamet, Ahmad Doe and Aktar Doe (hereinafter "Petitioners")

seek the Great Writ. On information and belief, Petitioners are citizens of the People's Republic

of China. Petitioner Ayoub Haji Mamet acts on his own behalf and through his Next Friend,

Adel Abdul Hakim, and Petitioners Ahmad Doe and Aktar Doe act on their own behalf and

through their Next Friend, Usama Hasan Abu Kabir. Petitioners are civilians who have been

deemed not to be "enemy combatants" but who are being held virtually *incommunicado* in

military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"),

Camp Iguana, without basis, without charge, without access to counsel and without being

afforded any fair process by which they might challenge their detention. Petitioners are being

held by color and authority of the Executive, and in violation of the Constitution, laws and

treaties of the United States as well as customary international law. Accordingly, this Court

should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioners or to

establish in this Court a lawful basis for their detention. This Court should also order injunctive

and declaratory relief.

Pursuant to the President's authority as Commander-in-Chief, his authority under the

laws and usages of war, or under the November 13, 2001 Executive Order, Respondents George

W. Bush, President of the United States; Donald H. Rumsfeld, U.S. Secretary of Defense; Army

Brigadier General Jay Hood, Commander of Joint Task Force-GTMO; and Army Colonel Mike

Bumgarner, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either

ultimately responsible for, or have been charged with the responsibility of maintaining, the

custody and control of the detained Petitioners at Guantánamo.

# I.
## JURISDICTION

1.    Respondents are detaining Petitioners "under or by color of the authority of the United States" and "in violation of the Constitution or laws or treaties of the United States." Petitioners bring this action under 28 U.S.C. §§ 2241(c)(1) and (c)(3) and 2242.  Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 701 et seq.; Articles I and II of, and the Fifth and Sixth Amendments to, the Constitution of the United States.  Because they seek declaratory relief, Petitioners also rely on Fed. R. Civ. P. 57.

2.    This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of *Habeas Corpus*, and to entertain the Petition filed by Adel Abdul Hakim, the Next Friend of Petitioner Ayoub Haji Mamet, and by Usama Hasan Abu Kabir, the Next Friend of Petitioners Ahmad Doe and Aktar Doe, under 28 U.S.C. § 2242.  This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction, and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

# II.
## VENUE

3.    Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391 because at least one of the Respondents resides in the District, a substantial part of the events giving rise to the claims occurred in the District, at least one Respondent may be found in the District, and all Respondents are either officers or employees of the United States, or agencies thereof, and acting in their official capacities.

KL3:2466413.3

## III.
## PARTIES

4.      On information and belief, Ayoub Haji Mamet, Ahmad Doe and Aktar Doe are citizens of the Xinjiang Autonomous Region, a western province of the People's Republic of China, also commonly referred to as "East Turkistan." Petitioners are presently incarcerated at Guantánamo and held in Respondents' unlawful custody and control. Petitioners are Uighurs (pronounced "WEE-ghurs"), a Turkic Muslim minority group that has been brutally oppressed by the communist Chinese government. Because Petitioners have been denied access to legal counsel, Adel Abdul Hakim, who is presently incarcerated at Guantánamo and is a Uighur, acts as the Next Friend of Ayoub Haji Mamet, and Usama Hasan Abu Kabir, who is presently incarcerated at Guantánamo and is a citizen of Jordan, acts as the Next Friend of Ahmad Doe and Aktar Doe. *See* Authorization of Adel Abdul Hakim (Ex. A) and Authorization of Usama Hasan Abu Kabir (Ex. B). Upon information and belief, Petitioner Ayoub Haji Mamet was formerly incarcerated in the same cell with Next Friend, Adel Abdul Hakim, and at the present time, both are imprisoned in Camp Iguana, which currently houses ten detainees who have all been determined not to be enemy-combatants at Guantánamo. Upon information and belief, Petitioners Ahmad Doe and Aktar Doe are also imprisoned in Camp Iguana.

5.      The United States is currently incarcerating a total of approximately 22 Uighurs at Guantánamo Bay. Upon information and belief, Petitioners are among a group of uniquely-situated prisoners seized by mistake whom the United States government has determined are not enemy combatants. According to a March 16, 2005 press report, "The Pentagon determined last year that half of the two dozen Uighur Chinese captured in the war on terrorism have no intelligence value and should be released." *"Uighurs Face Return from Guantanamo,"* FIN. TIMES (March 16, 2005); *See e.g.,* Demetri Sevastopulo, *"Cheney Backs Guantanamo Bay*

*Prison Amid Growing Unease*," FIN. TIMES (June 14, 2005) ("The U.S. is holding about 550

detainees at Guantanamo, including about a dozen Uighur Chinese whom the U.S. has

determined are no longer 'enemy combatants'."); Carol Rosenberg, "*Guantanamo Bay: Closing

Prison Would Be Tricky Easy*," MIAMI HERALD (June 12, 2005) ("Navy Secretary Gordon

England confirmed in March that Guantanamo captives include Chinese Muslims—reportedly

about two dozen—who are no longer classified as 'enemy combatants,' the Bush administration

term for terrorism suspects."); Editorial, WASH. POST (May 3, 2005) ("[T]he military has

determined that about 15 of [the Uighurs at Guantanamo] are not 'enemy combatants'...The

Pentagon has, consequently, cleared them for release."). Despite having determined that each

Petitioner is not an "enemy combatant" and/or not a threat to the security of the United States,

Respondents have nevertheless failed to release them from prison.

6.      Respondent George W. Bush is the President of the United States and

Commander-in-Chief of the United States Military. Petitioners are being detained pursuant to

President Bush's authority as Commander-in-Chief, under the laws and usages of war or,

alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and

Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (November 13,

2001) ("Executive Order"). President Bush is responsible for Petitioners' unlawful detention and

is sued in his official capacity.

7.      Respondent Donald Rumsfeld is the Secretary of the United States Department of

Defense. Pursuant to the President's authority as Commander-in-Chief, under the laws and

usages of war or, alternatively pursuant to the Executive Order, Respondent Rumsfeld has been

charged with the responsibility of maintaining the custody and control of Petitioners. He is sued

in his official capacity.

8.     Respondent Brigadier General Jay Hood is the Commander of Joint Task Force-GTMO, the task force charged with administering the detention operation at Guantánamo Bay. He has supervisory responsibility for Petitioners and is sued in his official capacity.

9.     Respondent Army Colonel Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioners are presently held.  He is the immediate custodian responsible for Petitioners' detention and is sued in his official capacity.

10.     Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("Contractor Employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantánamo.  All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or Contractor Employees.

## IV.
## STATEMENT OF FACTS

11.     Upon information and belief, Petitioners are not, nor have they ever been, enemy aliens, lawful or unlawful belligerents, or combatants of any kind under any definition adopted by the government in any civil or military proceeding.

12.     Upon information and belief, Petitioners are not, nor have they ever been, "enemy combatant[s]" who were "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2639 (2004).

13.     Upon information and belief, Petitioners were present in Afghanistan after the United States began military operations in that country in October 2001.  Upon information and

belief, Petitioners did not take up arms against United States forces, and did not support forces hostile to or engaged in armed conflict with the United States. Petitioners fled Afghanistan, eventually making their way to Pakistan with a large number of other refugees. In Pakistan, Petitioners were detained by Pakistani authorities and eventually turned over to the U.S. military. Upon information and belief, the United States paid a $5,000 bounty for each Petitioner. *See also* Michelle Faul, *"Guantanamo Detainees Say Arabs, Muslims Sold for U.S. Bounties,"* Assoc. Press, May 31, 2005.

14.    Petitioners seek to enforce their rights to a judicial determination of the lawfulness of their detention.

15.    The United States has not shown that Petitioners were members of the Taliban, of the armed forces of Afghanistan, or of Al Qaeda prior to their detention. Nor has it shown that Petitioners committed any violent or otherwise hostile acts against any American person or property. Furthermore, the United States has failed to demonstrate that Petitioners had any involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, or any act of international terrorism attributed by the United States to Al Qaeda or any other terrorist group.

16.    Upon information and belief, Petitioners are among a group of 15 Uighurs held in Guantánamo who have twice been determined not to be enemy combatants – once after a Pentagon review in late 2003 and again in March 2005 – and have been cleared for release from Guantánamo. *See* Robin Wright, *"Chinese Detainees are Men Without a Country: 15 Muslims, Cleared of Terrorism Charges, Remain at Guantanamo With Nowhere to Go,"* Wash. Post, Aug. 24, 2005, at A1 ("15 Uighurs have actually been cleared for release from Guantanamo Bay twice, once after a Pentagon review in late 2003 and again last March, U.S. officials said.").

6

17.     Each Petitioner, however, remains incarcerated at the U.S. Naval base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

18.     Petitioners have not been afforded any procedures that would satisfy their rights under the most fundamental common law notions of due process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

19.     Upon information and belief, each Petitioner desires to pursue in United States courts every available legal challenge to the lawfulness of his detention.

### The Joint Resolution

20.     In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a military campaign against the Taliban government, then in power in Afghanistan. On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

21.     As, upon information and belief, Petitioners did not participate in the armed conflict at any point in time, are not and have never been members of Al Qaeda or any other terrorist group, did not commit any violent act against any American person or espouse any violent act against any American person or property, and had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001 or any act of international terrorism attributed by the United States to Al Qaeda or any other terrorist group, they are not

7

properly subject to the detention order by President Bush or subject to President Bush's authority

as Commander-in-Chief, under the laws and usages of war, or under the Joint Resolution.

### The Executive Order

22.    On November 13, 2001, Respondent Bush issued the Executive Order authorizing

Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to believe":

(i)    is or was a member of the organization known as al Qaeda;

(ii)    has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

(iii)    has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001). President Bush must

determine in writing whether an individual falls within the purview of the Executive Order. The

Executive Order was neither authorized nor directed by Congress, and is beyond the scope of the

Joint Resolution of September 18, 2001.

23.    The Executive Order purports to vest President Bush with the sole discretion to

identify individuals who fall within its purview. It establishes no standards governing the

exercise of his discretion. Once a person has been detained, the Executive Order contains no

provision for that person to be notified of the charges he may face. The Executive Order

authorizes detainees to be confined indefinitely without charges. It contains no provision for a

detainee to be notified of his rights under domestic and international law, and provides neither

the right to counsel, nor the rights to notice of consular protection or to consular access at the

detainee's request. It provides no right to appear before a neutral tribunal to review the legality

of a detainee's continued detention and contains no provision for recourse to an Article III court.

In fact, the Executive Order expressly bars review by any court. In short, the Executive Order

authorizes indefinite and unreviewable detention, based on nothing more than President Bush's

8

written determination that an individual is subject to its terms which, since not reviewable by any court, may be based on false evidence, evidence obtained through torture, or no evidence at all.

24.     The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate Petitioners was made by Respondents in the United States and in this judicial district, the decision to detain Petitioners at Guantánamo Bay Naval Station was made in the United States and in this judicial district, and the decision to continue detaining Petitioners was, and is, being made by Respondents in the United States and in this judicial district.

25.     The United States has not shown that President Bush has certified or determined in any manner, in writing or otherwise, that Petitioners are subject to the Executive Order.

26.     The United States has not shown that Petitioners have been, and are being, detained lawfully either pursuant to the Executive Order, pursuant to President Bush's authority as Commander-in-Chief and/or under the laws and usages of war insofar as Petitioners have been denied the process due to them under the common law and the Due Process Clause of the Fifth Amendment to the Constitution of the United States, domestic civil and military law, as well as international law.

### Guantánamo Bay Naval Station

27.     On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba.  In April 2002, all prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo.  Currently, prisoners are housed in Camp Delta and Camp V, an additional maximum-security interrogation and detention center, as well as other

9

camps including Camp Iguana, where, upon information and belief, Petitioners and other prisoners determined not to be enemy-combatants are now detained.

28.     Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *Rasul v. Bush*, 124 S.Ct. 2686, 2698 (June 28, 2004).

29.     On a date unknown to counsel for Petitioners, but known to Respondents, the United States transferred Petitioners to Guantánamo Bay Naval Station, where, upon information and belief, they have been held ever since, in the custody and control of Respondents.

## The Conditions of Detention at Guantánamo

30.     Upon information and belief, the United States has held Petitioners at Guantánamo Bay Naval Station virtually *incommunicado*.

31.     Upon information and belief, Petitioners have been interrogated by representatives of the People's Republic of China while in the custody of the United States at Guantánamo, and have been subjected to threats and "stress and duress" techniques such as sleep deprivation, forced sitting for hours and "environmental manipulation" such as exposure to extreme heat or cold.

32.     Upon information and belief, Petitioners have been or will be forced to provide involuntary statements to Respondents' agents at Guantánamo and have been or will be interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, though they have not been charged with an offense and have not been notified of any pending or contemplated charges. They have been provided neither access to counsel nor the means to secure and contact counsel. Upon information and belief, Respondents contend that Petitioners should not be informed of their rights under the laws or Constitution of the United States, the regulations of the United States Military, the Geneva

KL3:2466413.3

Conventions, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, and the 1954 Convention Relating to the Status of Refugees or customary international law. As a result, upon information and belief, Petitioners lack awareness of their rights under domestic and international law.

33.     Upon information and belief, the United States has held Petitioners at Guantánamo Bay Naval Station under conditions that violate their constitutional and international rights to dignity and freedom from torture, cruel, inhuman and degrading treatment and punishment. *See, e.g.*, United Nations Press Release, "United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees," Feb. 4, 2005; International Committee of the Red Cross, Press Release, "The ICRC's Work at Guantánamo Bay," Nov. 30, 2004; International Committee of the Red Cross, Operational Update, "U.S. Detention Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC," July 26, 2004; Amnesty International, United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror', at 22 (Oct. 27, 2004) (available at http://web.amnesty.org/library/Index/ENGAMR 511452004); *see also* Barry C. Scheck, Abuse of Detainees at Guantanamo Bay, The Nat'l Assoc. of Criminal Defense Lawyers Champion (Nov. 2004).

34.     Many of these violations – including isolation for up to thirty days, twenty-eight-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror – were actually interrogation techniques approved for use at Guantánamo by the most senior Department of Defense lawyer. *See* Action Memo from William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002); Pentagon Working Group Report on Detainee

Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations, at 62-65 (Apr. 4, 2003).[1]

35.    Approved interrogation techniques appear to have resulted in the death of at least one detainee while in Respondents' custody in Iraq, and in other abuses at Bagram Air Force base. *Iraqi Died While Hung from Wrists,* ASSOC. PRESS, Feb. 17, 2005; *Papers Reveal Bagram Abuse,* THE GUARDIAN, Feb. 18, 2005.

36.    Some military lawyers have objected to and tried to stop the abusive interrogations at Guantánamo. *Military Lawyers Objected to Interrogation Methods at Guantánamo Sources Say,* N.Y. DAILY NEWS, Feb. 13, 2005 ("Judge Advocates—uniformed legal advisers known as JAGs who were assigned to a secret war crimes task force—repeatedly objected to aggressive interrogations by a separate intelligence unit at Camp Delta, where Taliban and al-Qaida suspects have been jailed since January 2002. The military lawyers' actions had never been disclosed and are the first known cases of lower-level officers resisting interrogations at the Cuban camp that might constitute torture.").

37.    On information and belief, the International Committee of the Red Cross ("ICRC") has charged the U.S. military with intentional use during interrogations of psychological and physical coercion on prisoners at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, *"Red Cross Finds Detainee Abuse in Guantánamo,"* N.Y. TIMES, Nov. 30,

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at Guantanamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay,* 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23 july04.pdf). The Department of Defense also informed the Associated Press that a number of interrogators at Guantanamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report Details Guantanamo Abuses,* Assoc. Press, Nov. 4, 2004.

2004, at A1. The report includes claims that doctors and other medical professionals at Guantánamo participated in planning for interrogations. *Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, "*When Doctors Go to War,*" N.E. J. MED., Jan. 6, 2005, at 3-4. Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques" including 24-plus hour interrogations involving temperature extremes, dogs, prolonged isolation, and loud music. *See* Amnesty International, GUANTÁNAMO: AN ICON OF LAWLESSNESS, Jan. 6, 2005, at 3-5; *see also* Neil A. Lewis, "*Fresh Details Emerge on Harsh Methods at Guantánamo,*" N.Y. TIMES, Jan. 1, 2005, at A1; Carol D. Leonnig, "*Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos,*" WASH. POST, Dec. 26, 2004, at A1; Neil A. Lewis and David Johnston, "*New F.B.I. Memos Describe Abuse of Iraq Inmates,*" N.Y. TIMES, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, "*FBI Agents Allege Abuse of Detainees at Guantánamo Bay,*" WASH. POST, Dec. 21, 2004, at A1; Neil A. Lewis, "*F.B.I. Memos Criticized Practices at Guantánamo,*" N.Y. TIMES, Dec. 7, 2004, at A19. Even more recently, the Associated Press has reported allegations that female Guantánamo interrogators have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to break Muslim detainees. Paisley Dodds, *Gitmo Soldier Details Sexual Tactics,* ASSOC. PRESS, Jan. 27, 2005; *see also* Eric Saar & Viveca Novak, INSIDE THE WIRE: A MILITARY INTELLIGENCE SOLDIER'S EYEWITNESS ACCOUNT OF LIFE AT GUANTANAMO (2005).

    38. On information and belief, the unlawful and unconstitutional interrogation techniques used by Respondents at Guantánamo include not only physical and psychological abuse but also other impermissible conduct contrary to due process requirements, including having agents of the Government present themselves as lawyers for the detainees during

meetings with the detainees, for the purpose of extracting information from the detainees. *See* Sam Hannel, *"Lawyers Describe Guantánamo Detainees,"* SEATTLE POST-INTELLIGENCER, Jan. 19, 2005.

39.     Respondents, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush. Eric Lichtblau, *"Gonzales Says Humane-Policy Order Doesn't Bind C.I.A.,"* N.Y. TIMES, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, *"Torture by U.S. Personnel Illegal, Gonzales Tells Senate,"* WASH. POST, Jan. 19, 2005, at A4.

40.     Counsel for Respondents have also consistently maintained that the United States has reserved the right to hold detainees at Guantánamo under their current conditions indefinitely. *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Or. Argument on Mot. to Dismiss at 22-24 (statements of Principle Deputy Associate Att'y Gen. Brian Boyle); *see also* Dana Priest, *"Long-Term Plan Sought for Terror Suspects,"* WASH. POST, Jan. 2, 2005, at A1. Moreover, the Government has recently acknowledged plans to begin constructing a new, more permanent facility at Guantánamo. Christopher Cooper, *"Detention Plan: In Guantánamo, Prisoners Languish in a Sea of Red Tape,"* WALL ST. J., Jan. 26, 2005, at A1; *"Guantánamo Takes on Look of Permanency,"* ASSOC. PRESS, Jan. 9, 2005.

41.     According to the Department of Defense, even detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo indefinitely. *See* Department of Defense Press Background Briefing of July 3,

2003, *at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited Feb. 14,

2005). In the case of detainees who have been deemed to be "no longer" enemy combatants

(referred to as "NLECs" by Respondents' counsel), such as Petitioners, Respondents have

articulated that these detainees can be held indefinitely as part of "the Executive's necessary

power to wind up wartime detentions in an orderly fashion." Resp't Supplemental Mem. at 12 in

*Qassim, et al. v. Bush, et al.*, Civ. No. 05-497, 2005 WL 2001158 (D.D.C. Aug. 19, 2005)

(hereinafter "*Qassim*"). On August 19, 2005, United States District Court Judge James

Robertson found that in the case of two Uighurs who had been declared NLECs, "[t]here [was]

no basis for" the government's authority to detain petitioners except the Executive's assertion of

that power and ordered a hearing to determine what should be done with the Uighurs in that case.

*See Qassim, et al. v. Bush, et al.*, Mem. Order at 2, Civ. No. 05-497, 2005 WL 2001158 (D.D.C.

Aug. 19, 2005).

42.     Press reports indicate that the Government has been unsuccessful in finding a

third country willing to take the Uighurs from Guantánamo. *"Uighurs face return from

Guantanamo,"* FIN. TIMES, March 16, 2005, at 14. The fact that the United States may not yet

have identified a country willing to accept Petitioners does not provide a basis for its continued

and indefinite imprisonment of Petitioners, particularly in light of Petitioners' having been found

not to be enemy combatants.

### Rendition

43.     During interrogations, detainees have also been threatened with rendition or

transfer to countries that routinely practice torture. Upon information and belief, the United

States has secretly transferred detainees to such countries without complying with the applicable

legal requirements for extradition. This practice, known as "rendition" or "extraordinary

rendition," is used to facilitate interrogation by subjecting detainees to torture. *See* Jane Mayer, "Outsourcing Torture: The Secret History of America's "Extraordinary Rendition" Program, *The New Yorker*, Feb. 14, 2005, at 106.

44.    The U.S. government's practice of rendition has been well documented by various major American and international news organizations, including, *inter alia*, the *Washington Post*, *The Los Angeles Times*, and the British Broadcasting Corporation (the "BBC"). According to news accounts,

> Since Sept. 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence source. The suspects have been taken to countries, . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics -- including torture and threats to families -- that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said.

Rajiv Chandrasekaran & Peter Finn, *"U.S. Behind Secret Transfer of Terror Suspects,"* WASH. POST, Mar. 11, 2002, at A1; *see also* Dana Priest, *"Long Term Plan Sought for Terror Suspects,"* WASH. POST, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt . . ., that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

45.    Upon information and belief, Petitioners are at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture during interrogations and incarceration. Upon information and belief, the Chinese government has specifically demanded that the United States return the Uighurs in Guantánamo to China to face charges of terrorism.

46.    Petitioners cannot legally or ethically be returned or rendered to the People's Republic of China. To do so would very likely subject them to arbitrary arrest, torture or even

16

death at the hands of the Chinese regime. According to the State Department, in China during 2004, "[f]ormer detainees reported credibly that officials used electric shocks, prolonged periods of solitary confinement, incommunicado detention, beatings, shackles, and other forms of abuse…[S]tate-run media reported that 460 people were killed by law enforcement officials and over 100 seriously injured through abuse or dereliction of duty in 2003." U.S. Dept. of State, Country Reports on Human Rights Practices—2004 (China Report) § 1(c)(2005) (available at www.state.gov/g/drl/rls/hrrpt/2004/41640.htm). The State Department reports particularly harsh abuse of ethnic Uighur Muslims:

> The [Chinese] Government used the international war on terror as a justification for cracking down harshly on suspected Uighur separatists expressing peaceful political dissent and on independent Muslim religious leaders…Uighurs were executed and sentenced to long prison terms during the year on charges of separatism…In October 2003, Uighur Shaheer Ali was executed after being convicted of terrorism. He had been repatriated forcibly from Nepal in 2002, where he had been interviewed by UNHCR and granted refugee status.

*Id.* at Introduction and § 5, subsection on National/Racial/Ethnic Minorities; Mark Mazzetti & John Hendren, "*U.S. Quietly Exploring Alternatives to Guantanamo Bay*," Los Angeles Times, June 15, 2005 ("The repatriation of nearly two dozen ethnic Uighurs from China detained at Guantanamo Bay has been held up because of State Department concerns that the Uighurs might be tortured or killed after being turned over to Chinese custody.").

## V.
## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

## (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL DEPRIVATION OF LIBERTY)

47.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

17

48.     By the actions described above, Respondents, acting under color of law, have violated and continue to violate common law principles of due process as well the Due Process Clause of the Fifth Amendment to the Constitution of the United States.  President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals, without due process of law, and the remaining Respondents have implemented those orders. Respondents' actions deny Petitioners the process accorded to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice,  Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

49.     To the extent that Petitioners' detention purports to be authorized by the Executive Order, that Order violates common law principles of due process as well the Due Process Clause of the Fifth Amendment on its face and as applied to Petitioners.

50.     To the extent that Respondents claim that Petitioners' detention is authorized by the Executive's purported "necessary power to wind up wartime detentions in an orderly fashion," that detention violates common law principles of due process as well the Due Process Clause of the Fifth Amendment.

51.     Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## SECOND CLAIM FOR RELIEF

## (DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

52.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

18

KL3:2466413.3

53. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioners to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

54. Accordingly, Petitioners are entitled to declaratory and injunctive relief as well as any other relief the Court may deem appropriate.

### THIRD CLAIM FOR RELIEF

### (GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

55. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

56. By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioners the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

57. Violations of the Geneva Conventions are direct treaty violations, are violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

58. Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

59. Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

KL3:2466413.3

## FOURTH CLAIM FOR RELIEF

### (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW - ARBITRARY DENIAL OF DUE PROCESS)

60.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

61.     By the actions described above, Respondents have denied and continue to deny Petitioners the due process accorded to persons seized and detained by the United States military in times of armed conflict as established by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

62.     Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## FIFTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE - TORTURE)

63.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

64.     By the actions described above, upon information and belief, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon detainees in order to obtain coerced information or confessions from detainees, punish or intimidate detainees or for other purposes.  Upon information and belief, among other abuses detainees have been held in conditions of isolation; placed in constant vulnerability to repeated interrogation and severe beatings; kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement for minor rule infractions for prolonged periods of time; interrogated while

20

KL3:2466413.3

shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and/or subjected to repeated psychological abuse.

65.     The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

66.     Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against detainees.

67.     On information and belief, Petitioners were subject to the same severe physical and psychological abuse and agony as other detainees and are entitled to habeas, declaratory, and injunctive relief, and other relief to be determined at trial.

## SIXTH CLAIM FOR RELIEF

## (ALIEN TORT STATUTE - WAR CRIMES)

68.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

69.     By the actions described above, upon information and belief, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of detainees constitutes war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the Geneva

KL3:2466413.3

Conventions and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decisions, and other authorities.

70.    As a result of Respondents' unlawful conduct, upon information and belief, detainees have been and are being forced to suffer severe physical and psychological abuse and agony.  Furthermore, upon information and belief, Petitioners have been subject to the same conditions as detainees, and are therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the Court may deem appropriate.

<u>**SEVENTH CLAIM FOR RELIEF**</u>

**(ALIEN TORT STATUTE – CRUEL, INHUMAN OR DEGRADING TREATMENT)**

71.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

72.    Upon information and belief, the acts described herein had the intent and the effect of grossly humiliating and debasing detainees, forcing them to act against their respective wills and consciences, inciting fear and anguish, and breaking their physical or moral resistance.

73.    The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

22

74.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of detainees.

75.    Upon information and belief, Petitioners were forced to suffer the same severe physical and psychological abuse and agony, and are entitled to declaratory and injunctive relief, as well as other relief to be determined at trial.

## EIGHTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE –
### ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

76.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

77.    The acts described herein constitute arbitrary arrest and detention of detainees in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

78.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of detainees in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

23

79.     As a result of Respondents' unlawful conduct, detainees, upon information and belief, have been and are being deprived of their freedom, separated from their families, and forced to suffer severe physical and mental abuse.  Furthermore, Petitioners, upon information and belief, are subject to the same conditions, and are therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the Court may deem appropriate.

## NINTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE- ENFORCED DISAPPEARANCE)

80.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

81.     By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of detainees in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

82.     As a result of Respondents' unlawful conduct, detainees have been and are being deprived of their freedom, separated from their families, and forced to suffer severe physical and mental abuse.  Upon information and belief, Petitioners are subject to the same conditions, and are therefore entitled to declaratory and injunctive relief and such other relief as the Court may deem appropriate.

24

## TENTH CLAIM FOR RELIEF

### (ARTICLE II OF THE UNITED STATES CONSTITUTION-
### UNLAWFUL DETENTION)

83.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully

herein.

84.    The United States has not shown that Petitioners are, or have ever been, enemy

aliens, lawful or unlawful belligerents, or combatants of any kind.  The Executive lacks the

authority to order or direct military officials to detain civilians who are seized far from the

theater of war or occupied territory or who were not "carrying a weapon against American troops

on a foreign battlefield." *Hamdi v. Rumsfeld*, 124 S.Ct. 2633, 2642 n.1 (2004).

85.    By the actions described above, President Bush has exceeded and continues to

exceed the Executive's authority under Article II of the United States Constitution by

authorizing, ordering and directing that military officials seize detainees and transfer them to

military detention, and by authorizing and ordering their continued military detention at

Guantánamo Bay Naval Station.  All of the Respondents acted and continue to act without lawful

authority by directing, ordering, and/or supervising the seizure and military detention of

detainees.

86.    President Bush's Executive Order authorizing the military seizure and detention

of detainees by the Respondents is *ultra vires* and illegal in that it exceeds the Executive's

authority under Article II of the United States Constitution.  Accordingly, the Executive Order is

void on its face, and as applied to Petitioners.

87.    To the extent that Respondents assert that their authority to detain Petitioners

derives from a source other than the Executive Order, including without limitation, the

Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of

the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

88.     Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## ELEVENTH CLAIM FOR RELIEF

### (VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

89.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

90.     The UCMJ governs the detention of persons by the armed forces of the United States.  Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States.  *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

91.     By arbitrarily and capriciously detaining Petitioners in military custody in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of Army Reg. 190-8 and other provisions of the UCMJ.

92.     Respondents' violation of Army Regulation 190-8 and of the UCMJ gives rise to a cause of action under the Administrative Procedures Act, 5 U.S.C. §§ 701 et seq.

93.     Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

26

## TWELFTH CLAIM FOR RELIEF

## (VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS )

94.      Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

95.      By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioners the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8, thereby violating the Administrative Procedures Act, 5 U.S.C. §§ 701 et seq.

96.      Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the Court may deem appropriate.

## THIRTEENTH CLAIM FOR RELIEF

## (VIOLATION OF THE APA – TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)

97.      Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

98.      By the actions described above, the Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioners to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8, thereby violating the Administrative Procedures Act, 5 U.S.C. §§ 701 et seq.

99.      Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

27

## FOURTEENTH CLAIM FOR RELIEF

## (VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

100.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

101.    Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioners' right to consult with counsel by conditioning counsel's access to Petitioner on unreasonable terms, including classification/declassification procedures, all in violation of Petitioners' attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

102.    Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## FIFTEENTH CLAIM FOR RELIEF

## (DUE PROCESS CLAUSE - RENDITION)

103.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

104.    Upon information and belief, Petitioners are at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of Petitioners to a country that creates a foreseeable and direct risk that they will be subjected to torture constitutes a violation of Petitioners' rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

105.    Accordingly, Petitioners are entitled to declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

28

## SIXTEENTH CLAIM FOR RELIEF

### (CONVENTION AGAINST TORTURE,  GENEVA CONVENTIONS AND CONVENTION RELATING TO THE STATUS OF REFUGEES- RENDITION)

106.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

107.    Upon information and belief, Petitioners are at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioners to a country that creates a foreseeable and direct risk that they will be subjected to torture constitutes a direct violation of Petitioners' rights under the Covenant Against Torture, the Third and Fourth Geneva Conventions, and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 (entered into force Apr. 22, 1954).

108.    Accordingly, Petitioners are entitled to declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

## SEVENTEENTH CLAIM FOR RELIEF

### (HABEAS CORPUS AND ALIEN TORT STATUTES - RENDITION)

109.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

110.    Upon information and belief, Petitioners are at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioners to a country that creates a foreseeable and direct risk that they will be subjected to torture constitutes a violation of Petitioners' rights under 28 U.S.C. §§ 2241 and 2242 and under customary international law, which may be vindicated under the Alien Tort Statute, 28 U.S.C. § 1350.

KL3:2466413.3

111.    Accordingly, Petitioners are entitled to declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

**EIGHTEENTH CLAIM FOR RELIEF**

**(DECLARATORY JUDGMENT ACT - DECLARATORY JUDGMENT)**

112.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

113.    Pursuant to 28 U.S.C. § 2201, this case presents an actual controversy as to which it is necessary that the Court declare the rights, obligations, and other legal relations of the parties.

114.    Petitioners are entitled to a declaration that the Executive Order of November 13, 2001, is *ultra vires* and unlawful as applied to Petitioners, being in violation of Article II of the Constitution of the United States, the Fifth Amendment to the Constitution of the United States , the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 701 et seq., the treaties of the United States and customary international law.

115.    Petitioners are also entitled to a declaration that the prolonged, indefinite, and restrictive detention of Petitioners without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the Constitution of the United States, the regulations of the United States Military, the treaties of the United States, and customary international humanitarian law.

KL3:2466413.3

## VI.
## PRAYER FOR RELIEF

WHEREFORE, Petitioners pray for relief as follows:

1.      Designate Adel Abdul Hakim as Next Friend of Petitioner Ayoub Haji Mamet and Usama Hasan Abu Kabir as Next Friend of Petitioners Ahmad Doe and Aktar Doe;

2.      Grant the Writs of *Habeas Corpus* and order Respondents to release Petitioners from their current unlawful detention;

3.      Order that Petitioners be brought before the Court to vindicate their rights;

4.      Order that Petitioners cannot be transferred to any other country without the knowing consent and specific written agreement of Petitioners (obtained voluntarily and without duress) and Petitioners' counsel while this action is pending;

5.      Order that Petitioners cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that Petitioners will be subject to torture;

6.      Order Respondents to allow counsel to meet and confer with Petitioners, in private and unmonitored attorney-client conversations;

7.      Order Respondents to cease all interrogations of Petitioners, direct or indirect, while this litigation is pending;

8.      Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioners;

9.      Order and declare the Executive Order of November 13, 2001, *ultra vires* and unlawful as applied to Petitioners, being in violation of Article II of the Constitution of the United States, the Fifth Amendment to the Constitution of the United States , the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 701 et seq., the treaties of the United States and customary international law;

31

K1.3:2466413.3

10.    Order and declare that the Executive's purported "necessary power to wind up wartime detentions in an orderly fashion" provides no basis for detention;

11.    Order and declare that the prolonged, indefinite, and restrictive detention of Petitioners without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the Constitution of the United States, the regulations of the United States military, the treaties of the United States, and customary international humanitarian law; and

12.    Grant such other relief as the Court may deem necessary and appropriate to protect Petitioners' rights under the common law, the Constitution of the United States, federal statutory law, the treaties to which the United States is a party and international law.

Dated:  September 23, 2005                    Respectfully submitted,

                                              Counsel for Petitioners:

                                              Paul Schoeman (Pursuant to LCvR 83.2(g))
                                              J. Wells Dixon (Pursuant to LCvR 83.2(g))
                                              Joel Taylor (Pursuant to LCvR 83.2(g))
                                              Alison Sclater (Pursuant to LCvR 83.2(g))
                                              Michael J. Sternhell (Pursuant to LCvR 83.2(g))
                                              KRAMER LEVIN NAFTALIS & FRANKEL LLP
                                              1177 Avenue of the Americas
                                              New York, New York 10036
                                              Tel:  (212) 715-9100
                                              Fax:  (212) 715-8000

                                              Barbara Olshansky (NY-0057)
                                              Tina Monshipour Foster (Pursuant to LCvR 83.2(g))
                                              Gitanjali S. Gutierrez (Pursuant to LCvR 83.2(g))
                                              CENTER FOR CONSTITUTIONAL RIGHTS
                                              666 Broadway, 7th Floor
                                              New York, New York 10012
                                              Tel:  (212) 614-6439
                                              Fax:  (212) 614-6499

32

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioners certify, pursuant to L. Cv. R. 83.2(g), that they are representing

Petitioners without compensation.

Dated:  September 23, 2005

_Paul Schoeman_

Paul Schoeman (Pursuant to LCvR 83.2(g))
J. Wells Dixon (Pursuant to LCvR 83.2(g))
Joel Taylor (Pursuant to LCvR 83.2(g))
Alison Sclater (Pursuant to LCvR 83.2(g))
Michael J. Sternhell (Pursuant to LCvR 83.2(g))
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Tel:  (212) 715-9100
Fax:  (212) 715-8000

Barbara Olshansky (NY-0057)
Tina Monshipour Foster (Pursuant to LCvR 83.2(g))
Gitanjali S. Gutierrez (Pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel:  (212) 614-6439
Fax:  (212) 614-6499

33



Exhibit A

UNCLASSIFIED                                11 of 12

CAMP IGUANA
AUGUST 29, 2005


I, ADEL ABDULHAKIM,
AM A DETAINEE AT CAMP IGUANA,
GUANTANAMO BAY.     I HAVE
BEEN ASKED BY AYOUB ███  ALSO
A PRISONER AT CAMP IGUANA, TO
REQUEST A LAWYER TO FILE A HABEAS
CORPUS PETITION IN COURT, SEEKING
HIS RELEASE.

                        عادل عبدل حكيم

                        ────────────────
                        ADEL ABDUL HAKIM


                — — — — — — —

                UNCLASSIFIED

Exhibit B

NOV-21-2003  01:35

P.03/04

1, USAMA HASAN ABU KABIR, UNDERSTAND THE TERM "NEXT FRIEND" AND KNOW THAT THE FOLLOWING PEOPLE WHO I KNOW FROM THIS PRISON WANT LAWYERS, AND WANT ME TO HELP ASSERT THEIR LEGAL RIGHTS IN ANY WAY POSSIBLE, AND I AUTHORIZE (FOR THEM) Clive Stafford Smith TO ENSURE THAT THEY HAVE LEGAL REPRESENTATION:

1  ABDUL NASSER (TORKFITANI)
2  ABU AKTAR
3  MOHAMMED
4  THABID
5  ABDULSOMAD
6  ALI
7  ABU BAKER
8  ABDUSABER
9  KHALID
10  AHMAD
11  JALAL JALALDIN
12  ABDURRAZAKH
13  AHMAD
14  SABEL
15  ABDULLAH      (COULD BE KAZ AKHSTANI)
16  ABDURAHMAN
17  SADAR
18  ARKEEN      (BROTHER OF SUFOAK)
19  ADEL
20  HAMMAD

**UNCLASSIFIED**

2

21 ABDURAZZAK  (KAZAKHSTAN)

22 ABDULLAH AL  (K.S.A.) QUATANY

23 JABIR AL QUATANY  ( " )

24 ZABIN THAHE ASSAMMERY (KSA)

25 YAKUB        (SYRIA)

26 JIHAD         "

27 BILAL         "

28 MOHAMMED       "

29 ABU AHMED       "

30 ABU RAWDA       "

31 ABDULLAH        "

32 ABU MOHAMMED (ALGERIA)

33 DR. ABU MOHAMMED

34 ABU ABDULLAH

35 HAMAD        (SUDAN)

36 DATED MAY 1, 2005.

أسامة أبو كبير

USAMA ABU KABIR

WITNESS:

CLIVE STAFFORD SMITH

UNCLASSIFIED

**CERTIFICATE OF SERVICE**

I, the undersigned attorney, hereby certify that a true and correct copy of the foregoing instrument has been served by Certified Mail, Return Receipt Requested, this 23rd day of September, 2005 upon the following parties:

**Kenneth L. Wainstein**
UNITED STATES ATTORNEY
District of Columbia
Judiciary Center
555 4th Street, N.W.
Washington, D.C. 20530

**George W. Bush**
PRESIDENT, UNITED STATES OF
AMERICA
The White House
1600 Pennsylvania Avenue, N.W.
Washington, D.C. 20301-1000

**Army Brig. Gen. J. Hood**
COMMANDER, JOINT TASK FORCE-
GTMO
JFT-GTMO
APO AE 09360

**Army Col. M. Bumgarner**
COMMANDER, JDOG
JTF-GTMO
APO AE 09360

**Alberto R. Gonzales**
ATTORNEY GENERAL OF THE
UNITED STATES
U.S. Department of Justice
Robert F. Kennedy Building
Tenth St. & Constitution Ave., N.W.
Room 5111
Washington, D.C. 20530

**Donald Rumsfeld**
SECRETARY, UNITED STATES
DEPARTMENT OF DEFENSE
1000 Defense Pentagon
Washington, D.C. 20301-1000

**Brig. Gen. J. Hood**
UNITED STATES ARMY
Army Pentagon
Washington, D.C. 20310-0200

**Col. M. Bumgarner**
UNITED STATES ARMY
Army Pentagon
Washington, D.C. 20310-0200

I further certify that I caused a true and correct copy of the foregoing instrument to be served by hand this 23rd day of September, 2005 upon the following party:

**Kenneth L. Wainstein**
UNITED STATES ATTORNEY
District of Columbia
Judiciary Center
555 4th Street, N.W.
Washington, D.C. 20530

_____
J. Wells Dixon