IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AYOUB HAJI MAMET, *et al.*, | ) |
| Petitioners, | ) |
| v. | ) Civil Action No. 05-CV-1886 (EGS) |
| GEORGE W. BUSH, President of the United States, *et al.*, | ) |
| Respondents. | ) |

**RESPONDENTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED FOR LACK OF PROPER "NEXT FRIEND" STANDING OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS PENDING RELATED APPEALS, AND MEMORANDUM IN OPPOSITION TO PETITIONERS' CROSS MOTION FOR EXPEDITED ENTRY OF PROTECTIVE ORDER AND OTHER RELIEF**

Respondents hereby submit this joint reply memorandum in support of their motion for order to show cause why case should not be dismissed for lack of proper "next friend" standing, or in the alternative, to stay proceedings pending related appeals, and memorandum in opposition to petitioners' cross motion for expedited entry of protective order and other relief.

Petitioners' brief contains an array of misguided arguments and unfounded accusations that fail to rebut the central premise of respondents' motion for order to show cause – petitioners must establish that they have proper standing to sue before the Court can exercise jurisdiction over this case, and petitioners have yet to do so here. Adel Abdul Hakim and Usama Hasan Abu Kabir, the detainees who seek habeas relief on behalf of other individuals detained at Guantanamo Bay, have not demonstrated that they possess proper "next friend" standing under the two-pronged standard articulated by the Supreme Court in Whitmore v. Arkansas, 495 U.S.

149, 163-64 (1990). Petitioners attempt to circumvent this critical requirement by complaining that respondents' conduct somehow necessitated this jurisdictionally deficient petition, which should thereby compel the Court to ignore established precedent and excuse petitioners from the next friend standing requirements. Petitioners' position, however, lacks both factual and legal merit. Petitioners bear the burden of establishing why the above-captioned petition for writ of habeas corpus, not directly authorized by the particular detainees at Guantanamo Bay for whom habeas relief is sought, but instead brought by other detainees claiming to act as their "next friends," should not be dismissed for lack of proper next friend standing. Absent proper standing to sue, this case should be dismissed for lack of jurisdiction.[1]

Even if the above-captioned case is not dismissed, it nonetheless should be stayed pending resolution of all appeals in Khalid v. Bush, Boumediene v. Bush, Nos. 04-CV-1142 (RJL), 04-CV-1166 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), appeals docketed, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005), and In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., 355 F. Supp. 2d 443 (D.D.C. 2005), appeal on petition for interlocutory appeal, No. 05-5064 (D.C. Cir. Mar. 10, 2005). Based on identifying information contained in the October 14, 2005 Declaration of Sabin Willett, submitted by petitioners in support of their memorandum in opposition to respondents' motion for order to show cause, respondents have confirmed the

---

[1] Respondents have challenged the standing of other detainees purporting to act as "next friends" in a number of other cases, and some Judges of the Court have transferred such motions before them to Judge Oberdorfer for decision. See, e.g., Ahmed Doe v. Bush, No. 05-CV-1458 (ESH) (dkt. no. 8); Nabil v. Bush, No. 05-CV-1504 (RMC) (dkt. no. 8); Al Hawary v. Bush, No. 05-CV-1505 (RMC) (dkt. no. 10); Shafiiq v. Bush, No. 05-CV-1506 (RMC) (dkt. no. 10); Idris v. Bush, No. 05-CV-1555 (JR) (dkt. no. 6); Qasim v. Bush, No. 05-CV-1779 (JDB) (dkt. no. 4).

identities of the three detainees for whom habeas relief is purportedly sought in this case.[2] All three of the detainees have been determined to no longer be enemy combatants ("NLECs") by the Combatant Status Review Tribunals ("CSRTs"). Even though these detainees are now classified as NLECs, the issues on appeal in Khalid and In re Guantanamo Detainee Cases nonetheless touch the core of the issues in this case and, thus, will determine how this case should proceed, if at all. Further proceedings would require the expenditure of significant judicial and other resources that may be avoided as a result of the appeals, and, in any event, such proceedings very likely would have to be revisited or relitigated once the appeals are decided and the Court of Appeals provides guidance regarding handling of the claims in all of the Guantanamo detainee cases. Thus, if proper standing is found to exist, the Court should stay this case pending the resolution of the appeals of Khalid and In re Guantanamo Cases, except for entry of the Protective Order and related orders entered in other Guantanamo habeas cases, which will facilitate counsel access to the detainees. Under no circumstances, however, should the Court grant petitioners' request for access to records of CSRT proceedings or enter an order requiring advance notice of release of these detainees from Guantanamo Bay through relinquishment of United States custody.

---

[2] Prior to receipt of the Willett Declaration, based only on the minimal identifying information contained in the petition and the purported next friend "authorizations" submitted by fellow detainees, respondents were unable to identify "Ahmad Doe" and arrived at only tentative determinations as to the identities of "Aktar Doe" and "Ayoub Haji Mamet." Though the identities of these detainees have now been established, their status as NLECs does not cure the lack of standing of the alleged next friend petitioners in this case (detainees Adel Abdul Hakim and Usama Hasan Abu Kabir) that warranted respondents' motion for an order to show cause.

**ARGUMENT**

I.   **Petitioners Have Failed to Establish Proper "Next Friend" Standing in this Case.**

The detainees claiming to act as "next friends" for other detainees on whose behalf habeas relief is sought in this case bear the burden of establishing proper standing to sue as a prerequisite to the Court's exercise of jurisdiction over their petitions.  See Elk Grove Unified School District v. Newdow, 124 S. Ct. 2301, 2308 (2004) ("In every federal case, the party bringing the suit must establish standing to prosecute the action."); Warth v. Seldin, 422 U.S. 490, 517-18 (1975) ("The rules of standing, whether as aspects of the Art. III case-or-controversy requirement or as reflections of prudential considerations defining and limiting the role of the courts, are threshold determinants of the propriety of judicial intervention.").  To establish standing in this "next friend" case, therefore, petitioners must demonstrate that (1) the detainees for whom habeas relief is sought — the real parties in interest — cannot challenge the legality of their detention themselves; and (2) the purported "next friends" have a significant relationship with each detainee to show that they are truly dedicated to each detainee's best interests.  See Whitmore, 495 U.S. at 163-64.  Petitioners have yet to satisfy either requirement.

As explained in the declarations submitted in support of respondents' motion, respondents have provided every detainee with adequate means and opportunity to file a habeas petition in order to meaningfully challenge the lawfulness of his detention.  The Department of Defense ("DoD") has notified each of its detainees at Guantanamo Bay of his right to file a petition for habeas corpus ("You may ask a civilian judge to look at the lawfulness of your detention . . ."), and has provided each detainee with the address of the United States District Court in the event that he desires to submit his own petition to the Court.  See (Second)

Declaration of Frank Sweigart, ¶¶ 3-5. Although petitioners would like the Court to believe that the detainees are being held "incommunicado," in fact, all detainees possess the opportunity to send and receive mail through the Military's mail delivery and collection system or through the International Committee for the Red Cross. See id., Ex. D. As a result, all detainees may write to friends, family members, or attorneys to request assistance with filing a habeas petition, if they so desire, or they may write and send a *pro se* petition to the Court themselves, as many detainees have. Petitioners have submitted no evidence that the detainees who are purportedly seeking habeas relief in this case are unable to take advantage of these opportunities. Moreover, DoD has taken affirmative steps to facilitate legal representation for detainees who have indicated a desire to challenge the legality of their detention by providing them with a form to complete and mail to the American Bar Association ("ABA"), which has agreed to recruit volunteer counsel for detainees desiring representation.[3] See (Second) Sweigart Declaration, ¶ 7. Petitioners cannot reasonably argue that the detainees at Guantanamo Bay are unable to seek habeas relief when scores of cases involving over 250 detainees are pending before the Court,[4] including 55 *pro se*

---

[3] Petitioners imply that the Guantanamo detainees have a "right" to counsel based on a decision by Judge Kollar-Kotelly in Al Odah v. United States, 346 F. Supp. 2d 1 (D.D.C. 2004), another pending Guantanamo detainee habeas case. See Pets' Mem. at 11. In that case, however, Judge Kollar-Kotelly explained that, despite there being no absolute right to counsel under the habeas statute, the Court, under its discretionary authority, may appoint counsel to represent Guantanamo petitioners properly before the Court, if warranted. See Al Odah, 346 F. Supp. 2d at 8. Neither the Court's decision in Al Odah nor respondents' delivery of the ABA Notification or other attempts to facilitate counsel access to properly represented detainees, imposes an obligation on respondents, or the Court, to automatically assign counsel to every detainee at Guantanamo Bay regardless of a detainee's desire to pursue legal recourse in court.

[4] There are presently 161 cases pending before the Court on behalf of approximately 296 petitioners, although this number includes detainees who filed multiple petitions. Respondents have also been unable to identify more than a dozen of these petitioners as detainees at Guantanamo Bay.

petitions that detainees mailed directly to the Court, and at least 18 petitions filed as a result of detainees initiating direct contact with counsel.  See also Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12) ("The petition presumes, rather than demonstrates through facts, that Ahmed has been denied access to the courts of the United States. . . . In light of the fact that several pro se petitions have been filed recently by Guantanamo Bay detainees, Ahmed's lack of access to this court cannot be presumed, but must be established."); Hamlily v. Bush, No. 05-CV-0763 (JDB) (Order dated October 3, 2005) (dkt. no. 16) ("[The petition] states only that [Hamlily] is 'being held essentially communicado' and that 'his family members have not been able to contact U.S. counsel to file a petition on his behalf.' . . . There is a serious question as to whether this alone is sufficient to establish Hamlily's inability to prosecute this action on his own behalf.").[5]  Based on this record, and absent any credible and specific evidence to the contrary, petitioners have yet to satisfy the first prong of the Whitmore test.

The purported "next friends" in the above-captioned case have also yet to demonstrate that they have a "significant relationship" with each detainee such that they are "truly dedicated to the[ir] best interests."  See Whitmore, 495 U.S. at 163-64.  Petitioners have not provided sufficient evidence to show that the detainees seeking "next friend" status have any sort of "significant relationship" with the detainees on whose behalf they claim to seek habeas relief.

---

[5] On October 31, 2005, Judge Bates discharged the order to show cause regarding next friend standing that he entered *sua sponte* in Hamlily v. Bush based on counsel's showing that the detainee in that case directly requested legal representation and authorized counsel's filing of the petition.  See Order dated October 31, 2005 in Hamlily v. Bush, No. 05-CV-0763 (JDB) (dkt. no. 19) (discharging order to show cause and dismissing next friend petitioner in the case).  Judge Bates noted, however, that "counsel's filing fail[ed] to address several of the serious deficiencies in next friend standing" raised in the Court's order to show cause.  See id. at 2.

Aside from some skimpy "authorizations" attached to the petitions that suggest nothing more than that the purported next friends are aware of other individuals detained at Guantanamo Bay, and a supplemental declaration containing basic biographical information gathered from conversations with Adel Abdul Hakim (the purported next friend to one of the detainees) and another detainee who is not a next friend petitioner in this case, see October 14, 2005 Declaration of Sabin Willett,[6] the Court is left with insufficient basis from which to conclude that the next friend petitioners, Adel Abdul Hakim and Usama Hasan Abu Kabir, know the other detainees in any meaningful way so as to ensure that they will genuinely pursue the other detainees' desires and interests, which is one of the primary motivations behind the next friend standing doctrine. See Whitmore, 495 U.S. at 164 ("These limitations on the 'next friend' doctrine are driven by the recognition that it was not intended that the writ of habeas corpus should be availed of, as a matter of course, by intruders or uninvited meddlers, styling themselves next friends.") (internal quotations omitted).[7] Absent proof that evidences a significant relationship, petitioners cannot

---

[6] To the extent that counsel argue that assertions by Abu Bakker Qassim, a detainee unrelated to this case, and Adel Abdul Hakim, who is purporting to act as next friend to only one detainee in this case, prove that all three detainees desire to challenge the legality of their detention, such information has no bearing on whether Usama Hasan Abu Kabir possesses a significant relationship to Ahmad Doe and Aktar Doe, the detainees on whose behalf he is seeking habeas relief.

[7] See also Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12) ("The petition does not provide basic personal facts about Ahmed, such as his citizenship, his age, whether he is married or has a family, the place of his arrest or capture, and the places of detention, if any, prior to his being transported to Guantanamo Bay. The absence of such facts leaves the impression that Hassen does not know even this much about Ahmed and his situation."); Hamlily v. Bush, No. 05-CV-0763 (JDB) (Order dated October 3, 2005) (dkt. no. 16) ("The Court notes the total lack of any basic facts about Hamlily in the petition or other filings in this case -- most notably, the absence of any details concerning Hamlily's individual conditions of confinement (in contrast to the detainee population at large), including interrogations of Hamlily, inadequacies in his diet or medical care, or restrictions on, or

demonstrate proper next friend standing, and the Court cannot exercise jurisdiction over the petitions in this case.

Because petitioners have not satisfied either requirement for next friend standing as articulated by the Supreme Court in Whitmore, petitioners seek to blame respondents for their own failures by asserting baseless accusations of respondents' allegedly obstructionist behavior which supposedly left petitioners with no recourse but to file jurisdictionally deficient petitions. For instance, petitioners complain that respondents' own notification to detainees advised them that they could "ask a friend" to file petitions on their behalf without also informing them that certain jurisdictional requirements must also be met, see Pets' Mem. at 12, and that counsel have been unable to identify family members who can act as next friends because respondents refuse to give them a list of all detainees at Guantanamo Bay. See id. at 9. Knowledge of the next friend standing requirements and counsel's ability, or lack thereof, to locate detainees' family members is of no consequence. Petitioners cannot escape the fundamental legal principle that "[i]n every federal case, the party bringing the suit must establish standing to prosecute the action." Elk Grove Unified School District v. Newdow, 124 S. Ct. 2301, 2308 (2004). As demonstrated above, all detainees may write to friends, family members, or attorneys to request assistance with filing a habeas petition, or they may submit a *pro se* petition to the Court themselves. See (Second) Sweigart Declaration, ¶ 3-5. The fact that petitions for habeas relief on behalf of over 250 detainees are pending before the Court establishes that respondents have not confined the detainees in conditions that preclude them from vindicating their right to

---

interference with, the practice of his religion. This lack of necessary factual information suggests that Aamer does not have a 'significant relationship' with Hamlily.").

challenge the lawfulness of their detention and confirms that the detainees can effectively access the courts and counsel if they choose to do so. While respondents have not prohibited detainees from exercising their legal rights,[8] respondents also do not have any obligation to actively prod these detainees to take advantage of their ability to file habeas petitions in U.S. courts. Some detainees simply may not want the U.S. courts to review the legality of their detention.[9] Counsel for petitioners in the above-captioned case chose to file petitions through other detainees purporting to act as next friends,[10] and now petitioners bear the burden of establishing that these

---

[8] The Declaration of Clive A. Stafford Smith, submitted in support of petitioners' memorandum, attempts to malign respondents' actions in virtually every aspect of the detention of individuals at Guantanamo Bay and the litigation of the detainees' petitions for habeas corpus. Mr. Smith, who represents Usama Hasan Abu Kabir, bases his lengthy diatribe on nothing more than various generalized allegations by unspecified detainees and through non-specific hearsay. In particular, his accusations that respondents have intentionally interfered with detainees' access to counsel so as to discourage them from seeking habeas relief and have prohibited attorneys from visiting Guantanamo Bay are patently false. While respondents do not allow unauthorized attorneys to travel to Guantanamo Bay to solicit detainees, many legitimately retained attorneys have complied with the counsel access procedures contained in the Protective Order and have visited Guantanamo Bay to meet with their detainee clients. The claim that military personnel are attempting to undermine the relationship between detainees and their attorneys has already been squarely rebutted by a sworn declaration in the Al Odah case. See Declaration of Esteban Rodriguez, filed on May 9, 2005 as Exhibit 2 to Respondents' Opposition to Petitioners' Motion for Writ of Injunction in Al Odah v. United States, No. 02-CV-0828 (CKK) (attached hereto as Exhibit A) ("The Department of Defense does not permit interrogators or other personnel to interfere with the relationship between any detainee and his lawyer. This would include a prohibition on impersonating a lawyer, on making disparaging comments about the lawyer, and on retaliating against a detainee for having met with a lawyer or being involved in habeas corpus litigation.").

[9] See, e.g., Declaration of Tony F. De Alicante, filed on May 6, 2005 as Exhibit C to Reply in Support of Respondents' Motion to Dismiss Petition in John Does 1-570 v. Bush, No. 05-CV-0313 (CKK) (stating that as of May 5, 2005, four different detainees refused to accept legal mail from their attorneys, and several have stated that they do not want to be represented by counsel).

[10] Respondents do not take the position that detainees can *never* act as proper next friends to other detainees, but argue only that the detainees who purport to do so in this case must

detainees who seek habeas relief on behalf of other individuals detained at Guantanamo Bay possess proper next friend standing under the Supreme Court's Whitmore test.

Thus, petitioners' suggestion that counsel should be allowed telephone access to the detainees for whom habeas relief is sought in order to discover if they desire to pursue habeas relief, and thereby render respondents' motion for order to show cause moot, effectively puts the cart before the horse. Counsel cannot avail themselves of the counsel access procedures contained in the Protective Order (including privileged mail correspondence, visits to Guantanamo Bay, and telephone access at respondents' discretion) until they first establish that proper jurisdiction over the case exists. Counsel elected to file these petitions through other detainees purporting to serve as next friends, and are obligated to satisfy the requirements for next friend standing before any proceedings in these cases, including entry of the Protective Order and other relief requested by petitioners, can move forward. Whether the detainees later authorize representation by counsel as required by the Protective Order does not solve the threshold standing question. Jurisdiction must be established and these cases must be properly before the Court before any proceedings may commence, including telephone access to the

---

establish their next friend status as a precondition to the Court's exercise of jurisdiction. Respondents also note that the recent and rising trend of detainees, such as Mr. Kabir, submitting next friend "authorizations" containing long lists of any other detainees that they can remember having contact with, without even attempting to satisfying Whitmore's jurisdictional requirements, is wholly improper. Counsel's promotion of such practices, as well as their complaint that DoD has not provided them a list of all Guantanamo detainees, demonstrate that counsel seek through next friend cases such as this one merely to further the cause of bringing habeas petitions on behalf of every detainee they learn about regardless of a detainee's particular wishes or the available avenues for detainees to initiate habeas suits themselves. See supra at 8-9.

detainees and counsel visits to Guantanamo Bay.[11]  Petitioners should not be excused from the requirements for next friend standing articulated by the Supreme Court in Whitmore.  If petitioners are unable to demonstrate that this petition was brought by legitimate next friends, jurisdiction over the petition is absent, and the case must be dismissed.

**II.     If the Court Does Not Dismiss this Case, It Should be Stayed Pending Resolution of the Appeals of Decisions in the Other Guantanamo Detainee Cases Adjudicating Issues that Bear Directly on this Case.**

If the Court finds that this case was filed by legitimate next friends,[12] the Court should stay proceedings in this case pending the resolution of the appeals in Khalid and In re Guantanamo Detainee Cases, which will determine whether and how this case should proceed. Petitioners in this case, even if no longer classified as enemy combatants, are foreign nationals who have no prior voluntary connection with or allegiance to the United States and who were

---

[11] Even the Protective Order and counsel access procedures typically made applicable in Guantanamo detainee habeas cases provides that "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee."  See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, 344 F. Supp. 2d 174, 185 (Ex. A) § III.C.1. (D.D.C. 2004).  Counsel has yet to provide sufficient evidence of their "authority to represent" the detainees for whom habeas relief is purportedly sought, i.e., to demonstrate the satisfaction of the requirements of next friend standing in this matter.  The Protective Order thus contemplates counsel visits and requests for telephone access only in cases properly before the Court.

[12] Even if the Court finds that petitioners have established next friend standing so that the Court can exercise jurisdiction over the petitions, the next friends should not be permitted to serve in this capacity beyond the time when counsel are permitted to meet with the detainees for whom habeas relief is sought.  See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, 344 F. Supp. 2d 174, 185 (Ex. A) § III.C. (D.D.C. 2004) (permitting counsel in proper next-friend cases two visits with a detainee before an authorization of representation by the detainee must be provided to respondents).  At that time, counsel should determine these detainees' wishes concerning pursuing a challenge to their detention through the habeas petitions in this case, such that the case can then either be converted into direct petitions or be dismissed.

previously held as enemy combatants. Any issue of the substantive legal rights of an alien, wartime detainee-petitioner under the Constitution, treaties, or statutes regarding his detention, as well as the powers provided the courts through the habeas statute with respect to wartime detentions, would be the subject of and affected by resolution of the pending appeals in Khalid and In re Guantanamo Detainee Cases. Such issues, thus, are properly the subject of a stay, and this is true regardless of whether an individual's detention is expected to continue or respondents have already determined to release him as soon as the necessary arrangements for an appropriate destination country can be made.[13] In short, it makes no sense for proceedings related to the merits of this case to go forward when decisions from the D.C. Circuit will determine the legal analyses applicable to this case and, indeed, whether and how this case should proceed.[14]

---

[13] The fact that an NLEC is, by virtue of that status, already slated for release, independent of the outcome of this litigation, would constitute, if anything, an additional factor weighing in favor of a stay. The pendency of appeals that are likely to determine the legal landscape going forward warrants a stay in *any* Guantanamo detainee habeas case, but if there is any such case in which it would be appropriate to forego a stay and forge ahead with plenary proceedings, surely it is not one in which respondents are already engaged in efforts to bring about a petitioner's release.

[14] Petitioners imply that the government does not have authority to detain an NLEC pending necessary arrangements for transfer to an appropriate destination country. See Pets' Mem. at 5. To the contrary, however, the Executive's authority regarding its initial wartime detention of enemy combatants, and the current custody pending resettlement of any such detainee ultimately declared an NLEC, is straightforward. The Executive's power to wage war and detain suspected enemy combatants is firmly established. See, e.g., Hamdi v. Rumsfeld, 124 S. Ct. 2633, 2640 (2004) (explaining that "[t]he capture and detention of lawful combatants and the capture, detention, and trial of unlawful combatants, by 'universal agreement and practice,' are 'important incident[s] of war'" (quoting Ex parte Quirin, 317 U.S. 1, 28 (1942))). The Executive's power to detain a suspected enemy combatant necessarily includes the authority to wind up that detention in an orderly fashion after a detainee has been determined to no longer be an enemy combatant or after hostilities have ended. Indeed, historically, the United States Military or its allies have continued the detention of prisoners of war following the end of major conflicts to which the U.S. has been a party in order to properly resolve repatriation issues or effectuate resettlement where repatriation was not appropriate due to humanitarian or other

Not only is a stay appropriate to the extent the next friend petitioners are determined to satisfy the applicable requirements, such a stay should apply with respect to the submission of factual returns. It makes no sense for the government to process and submit factual returns with respect to petitioners. Because respondents are no longer detaining petitioners as enemy combatants and plan to effect their release as soon as practicable, any factual return filed by respondents in such circumstances would consist of little more than the certification of the Director of the CSRTs indicating the CSRTs' findings that petitioners are no longer classified as enemy combatants. Such an exercise is unnecessary since respondents have herein confirmed that petitioners are NLECs. Further, it makes no sense for respondents to process and produce more extensive factual returns containing the records of proceedings before the CSRTs, since the entire purpose of a factual return in the habeas context is to "certify[] the true cause of the detention," see 28 U.S.C. § 2243, in order to justify a petitioner's continued detention. Accordingly, since petitioners' detention will not persist and the United States has no further interest in detaining petitioners, the submission of factual returns "certifying the true cause of the detention" is unnecessary here.[15] See, e.g., Almurbati v. Bush, 366 F. Supp. 2d 72, 78-79

---

concerns. See Christiane Shields Delessert, Repatriation of Prisoners of War to the Soviet Union During World War II: A Question of Human Rights, in World in Transition: Challenges to Human Rights, Development and World Order 80-81 (Henry H. Han ed., 1979) (noting delays in repatriation of prisoners after end of World War II and Korean War); Final Report to Congress on the Conduct of the Persian Gulf War, Appendix O, at 708 (April 1992) (available at http://www.ndu.edu/library/epubs/cpgw.pdf) (noting delays in return of prisoners after Persian Gulf War).

[15] Thus, petitioners' request for access to CSRT findings could be construed as an improper attempt to take discovery. A petitioner in a habeas case is not entitled to discovery as a matter of right, but rather must first demonstrate good cause to conduct discovery and obtain court permission. See, e.g., Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999) (explaining

(D.D.C. 2005) (Walton, J.) (stating that "[t]he ultimate objective of a habeas petition is release from custody"); Otey v. Hopkins, 5 F.3d 1125, 1130 (8th Cir. 1993) (explaining that "[t]he central focus of the writ of habeas corpus is to provide a remedy for prisoners who are challenging the fact or duration of their physical confinement and are seeking immediate release or a speedier release."). There will be no further proceedings necessary on petitioners' habeas claim for release from United States' custody; the justification for their continued detention – the purpose of factual returns – is no longer an issue.[16]

---

that "[a] habeas petitioner does not enjoy the presumptive entitlement to discovery of a traditional civil litigant," and that "discovery is available only in the discretion of the court and for good cause shown."); Al Odah v. United States, 329 F. Supp. 2d 106, 107-08 (D.D.C. 2004) (finding that Guantanamo detainee habeas petitioners must first seek leave of court before conducting discovery and denying leave to conduct discovery). Petitioners have not requested leave of court to take discovery, and the Court should not permit them to evade this requirement merely in opposing a motion to stay. Further, discovery is particularly inappropriate at this stage of the case when a jurisdictional challenge is pending and the case otherwise should be stayed pending related appeals, see supra at 11-12.

[16] Counsel's request that the detainees be given "immediate access to counsel by telephone" even while counsel's security clearance is pending (and with the assistance of an Uighur translator who may not be cleared), see Pets' Mem. at 17, is also inappropriate in this context. If the Court determines that next friend standing exists and the exercise of jurisdiction over this petition is proper, and thereafter makes the Protective Order entered in other Guantanamo habeas cases applicable to this case, such requests related to telephone access to detainees are to be brought through counsel to the Commander, JTF-GTMO. See In re Guantanamo Detainee Cases, 344 F. Supp. 2d 174, 190 (Ex. A, § VIII) (D.D.C. 2004). When an appropriate request is made, the Commander, JTF-GTMO will consider the request on an individual, case-by-case basis, taking account of all appropriate factors. See Declaration of Brigadier General Jay W. Hood, ¶¶ 8-9 (attached as Exhibit E to Pets' Mem.). Thus, given that counsel's request for telephone access is premature and inappropriate in this context, it should be denied.

Moreover, petitioners' argument that counsel in the Qassim case (involving two detainees determined to be NLECs) "have been able to obtain significant and immediate relief for their clients," Pets' Mem. at 16, which in turn allegedly favors the production of factual returns and immediate telephone access in this case, is misguided. As respondents have explained in the Qassim case, the Department of Defense had been planning to move all NLECs to the more relaxed communal living arrangements in Camp Iguana described by General Hood, and had

### III. If the Court Does Not Dismiss this Case, Petitioners' Request for an Order Requiring Advance Notice of Release from United States Custody Should Be Denied.

Petitioners also request an order requiring 30-days' advance notice of any transfer of petitioners from Guantanamo.  See Pets' Mem. at 18-19.  In seeking such an order, petitioners attempt to sidestep their burden of demonstrating that they are entitled to preliminary injunctive relief.  Petitioners' attempt, however, must fail because their request is injunctive in nature, and preliminary injunctive relief "is an extraordinary and drastic remedy" that should not be available "unless the movant, *by a clear showing*, carries the burden of persuasion."  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis in original).  Preliminary injunctive relief is not warranted unless the movant can clearly demonstrate that (1) the movant will suffer irreparable injury in the absence of an injunction; (2) the movant has a substantial likelihood of success on the merits with respect to the requested relief; (3) the injunction would not substantially injure interested parties; and (4) the injunction would further the public interest.  See Al-Fayed v. CIA, 254 F.3d 300, 303 (D.C. Cir. 2001).  Accordingly, petitioners have the burden to make a clear showing that they are entitled to the injunctive relief they seek.  As explained below, petitioners have not met that burden.

Petitioners have failed to present a valid factual or legal basis for their request that respondents provide the Court and counsel with 30 days' advance notice of release of petitioners from Guantanamo Bay.  With respect to all detainees accorded NLEC status through CSRTs, the government intends to release them as soon as a suitable country for transfer can be found that,

---

been exploring the possibility of telephone calls between the NLECs and their immediate family members, prior to any hearing in the Qassim case.  See Hood Declaration, ¶¶ 5-9.

consistent with United States policy, avoids a situation where petitioners would be returned to a country where it is more likely than not that they would be tortured. Cf. Declaration of Deputy Assistant Secretary of Defense for Detainee Affairs Matthew C. Waxman dated June 2, 2005 ¶ 6 (attached hereto as Exhibit C), Declaration of Ambassador Pierre-Richard Prosper dated March 8, 2005 ¶ 4 (attached hereto as Exhibit D). The Uighur NLECs in this case present a situation where the detainees cannot be repatriated to China due to concerns over potential mistreatment; efforts are underway, however, to locate a suitable country for transfer.[17] In any event, an advance notice requirement is inappropriate, as more fully expressed in Respondents' Memorandum in Opposition to Petitioner's Motion for Preliminary Injunction Requiring Advance Notice of Transfer or Repatriation in Dad v. Bush, No. 05-2083 (JDB) (attached hereto as Exhibit B). The memorandum, and declarations in support thereof, are attached hereto as Exhibits B-D, and are incorporated herein by reference. For the reasons set forth in that memorandum and the declarations, respondents respectfully request that petitioners' motion for an order requiring advance notice of transfer be denied.

## CONCLUSION

For the reasons stated, petitioners have not demonstrated proper next friend standing. Even if petitioners are able to establish proper standing, the Court should stay further proceedings in these cases, except as noted above, pending resolution of the appeals of Judge Leon's decision in Khalid and Boumediene and Judge Green's January 31, 2005 decision in In re Guantanamo Detainee Cases, and the remaining relief requested by petitioners should be denied.

---

[17] During the interim period, NLECs are held in the least restrictive conditions available. See Hood Declaration, ¶¶ 5-6.

Dated: October 31, 2005

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

DOUGLAS N. LETTER
Terrorism Litigation Counsel

   /s/ Preeya M. Noronha
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Room 7144
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents