IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| AYOUB HAJI MAMET, *et al.*, | Civil Action No. 1:05 CV 01886 (EGS) |
| Petitioners, | Hon. Emmet G. Sullivan |
| v. | |
| GEORGE W. BUSH, *et al.*, | |
| Respondents. | |

---

**PETITIONERS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PETITIONERS' CROSS MOTION FOR EXPEDITED ENTRY OF PROTECTIVE ORDER AND OTHER RELIEF**

KL3:2475433.2

**Introduction**

Petitioners Ayoub Haji Mamet, Ahmad Doe, and Aktar Doe, acting on their own behalf and through their Next Friends, Adel Abdul Hakim and Usama Hasan Abu Kabir, and by and through their undersigned counsel, respectfully submit this reply memorandum in further support of their cross motion for expedited entry of the Protective Order and other relief.

The relief requested is straightforward and modest in scope. Petitioners seek expedited entry of the Protective Order in order to gain prompt access to counsel. Petitioners also seek a factual return to the Petition, including documents prepared in connection with the Combatant Status Review Tribunals ("CSRTs"), which found that all three Petitioners are not enemy combatants, in order to determine when and why these determinations were made and what possible basis the government could now allege in support of its refusal to release them. Petitioners seek immediate telephone access to undersigned counsel so that they can finally communicate with the outside world after being held *incommunicado* for nearly four years at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"), despite having been found innocent of any crime. Finally, Petitioners request that Respondents provide them and their counsel with thirty days' advance, written notice before transferring them from Guantánamo because such a transfer could put them at grave risk of being detained and tortured by a foreign government and would deprive the Court of jurisdiction to hear their claims.

Petitioners, three Uighurs whom the government has determined are not enemy combatants, filed the instant Petition on September 23, 2005. Because they have no meaningful way of securing legal representation for themselves, Petitioners filed a habeas corpus petition through their Next Friends, Adel Abdul Hakim and Usama Hasan Abu Kabir, and by and through their undersigned counsel. The government responded with a motion for an order to

show cause why this case should not be dismissed for lack of proper "next friend" standing, or in the alternative, to stay these proceeding pending the resolution of appeals in *Khalid v. Bush* Nos. 04-CV-1142 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), and *In re Guantánamo Detainee Cases*, No. 02-CV-0299 (CKK), 355 F. Supp. 2d 443 (D.D.C. 2005).  In so doing, Respondents are attempting to deny Petitioners access to counsel and thereby foreclose the only viable avenue through which they might challenge their continued unjustified detention.

But Respondents concede a number of important points, which undermine any purported justification for continuing to deny Petitioner's access to counsel.  Specifically, in their reply memorandum, Respondents admit:

- Respondents have identified Petitioners Ayoub Haji Mamet, Ahmad Doe and Aktar Doe based on information contained in the October 14, 2005 Declaration of Sabin Willett (the "Willett Declaration").  Resp'ts' Reply Memorandum at 3 n.2;

- Petitioners Ayoub Haji Mamet, Ahmad Doe and Aktar Doe have all been determined to be no longer enemy combatants ("NLECs") by the Combatant Status Review Tribunals ("CSRTs").  Resp'ts' Reply Memorandum at 3;

- Should the Court find that Petitioners Adel Abdul Hakim and Usama Hasan Abu Kabir have standing to bring this action on behalf of their Next Friends, the Protective Order should be entered promptly in order to facilitate counsel's access to Petitioners.  Resp'ts' Reply Memorandum at 3.

Despite these concessions, Respondents nevertheless refuse to consent to entry of the Protective Order and oppose the other relief requested.

Respondents' objection to the entry of the Protective Order is a wholly tautological argument that "Counsel cannot avail themselves of the counsel access procedures contained in the Protective Order…until they first establish that proper jurisdiction over the case exists."  Resp'ts' Reply Memorandum at 10.  Were Petitioners free to communicate with the outside world and retain their own counsel, they would have no need to file a habeas petition

- 2 -

through their Next Friends. Their nearly four-year long, *incommunicado* detention, during which they have had no opportunity to speak to anyone aside from their jailors, compelled them to proceed in this fashion. Having done so, they are entitled to communicate with their counsel, which only entry of the Protective Order will allow. Further, since the government does not believe they pose a threat to the security of the United States or its allies, they should be permitted to communicate with their counsel by telephone while counsel is awaiting the outcome of the lengthy process of obtaining security clearance and authorization to visit Guantánamo.

They are also entitled to a factual return on the Petition. Although Respondents now concede that all three Petitioners have been exonerated by the CSRTs, they still refuse to consent to the minimally burdensome task of providing a factual return in this case. Respondents argue that "[s]uch an exercise is unnecessary since respondents have…confirmed that petitioners are NLECs." Resp'ts' Reply Memorandum at 13. While Petitioners are pleased to learn the government does not believe they are enemy combatants or that they pose a threat to the security of the United States, the fact remains that Petitioners remain imprisoned by the United States government. As Respondents rightly point out, the "purpose of a factual return in the habeas context is to 'certify[] the true cause of the detention,' *see* U.S.C. § 2243, in order to justify a petitioner's continued detention." Resp'ts' Reply Memorandum at 13. Petitioners are, therefore, entitled to know why they were initially detained, when a determination was made that they should be released and why they are still being detained despite that determination.

Respondents have also opposed Petitioners' request for an in order in aid of jurisdiction barring their transfer from Guantánamo without at least thirty days advance, written notice to Petitioners and their counsel. Although Respondents go to great lengths to characterize the relief requested as extraordinary and unjustified, Petitioners are simply asking that their

- 3 -

counsel be provided with adequate notice prior to any contemplated transfer based on their credible fear that they will be tortured if they are repatriated to China, or to any third country that might subsequently repatriate them to China.

Accordingly, Petitioners' cross motion should be granted.

**Argument**

I.  **THERE IS NO VALID BASIS FOR DELAYING ENTRY OF THE STANDARD PROTECTIVE ORDER OR DENYING PETITIONERS ACCESS TO THEIR COUNSEL BY TELEPHONE**

As Respondents readily concede, if proper standing is found to exist in this case based on the valid Next Friend authorizations of Petitioners Adel Abdul Hakim and Usama Hasan Abu Kabir then the Court should enter the Protective Order and related orders entered in other Guantánamo habeas cases, "which will facilitate counsel access to the detainees." Resp'ts' Reply Memorandum at 3. Unless and until the Protective Order is entered, Respondents will not allow privileged communications between Petitioners and their counsel, nor will they allow counsel to travel to Guantánamo and meet with Petitioners. Petitioners' counsel will also be prevented from reviewing classified or otherwise protected documents that may be directly relevant to Petitioners' claims for relief. While Petitioners believe that their Next Friend authorizations are legally sufficient and Respondents' motion to dismiss should be denied, there is no basis for delaying entry of the Protective Order while the motion is pending other than to frustrate Petitioners' access to counsel and further perpetuate their isolation from the outside world. Petitioners' request for expedited entry of the Protective Order should therefore be granted.

Petitioners' request for immediate access to counsel by telephone should also be granted. Respondents admit that Petitioners have been found not to be enemy combatants. Resp'ts' Reply Memorandum at 3. They are therefore not a threat to the security of the United

- 4 -

States or its allies and are of no intelligence value to Respondents. Access to counsel by telephone has previously been granted in an analogous case involving two Uighur detainees who were also found not to be enemy combatants. *See* Status Conf. Tr. at 3, *Qassim v. Bush*, Civ. No. 05-497 (JR) (Aug. 25, 2005) ("Status Conf. Tr.") (Schoeman Decl. Ex. B). As General Jay W. Hood stated in the *Qassim* case, "I have the capability to support a limited number of telephone calls by NLECs," and "[g]iven the circumstances of petitioners' situation and the scarcity of Uighur translators, if a request for telephone access were submitted, I would be willing to permit counsel to communicate with these two [*Qassim*] detainees by telephone every two weeks while their case is pending." Declaration of Jay W. Hood ¶¶ 6, 8 ("Hood Decl.") (Schoeman Decl. Ex. E). General Hood also has declared that he is "willing to authorize monthly calls between *all* NLEC detainees and immediate family members over a standard phone line." *Id.* ¶ 9 (emphasis added).

Allowing Petitioners immediate access to counsel by telephone would afford them their first opportunity in nearly four years to communicate with the outside world. Counsel would then be able to determine the whereabouts of their families and let their family members know where they are and that they are alive. Furthermore, to the extent that there can be any doubt that Petitioners' Next Friend authorizations are valid, telephone access would allow Petitioners to confirm that they desire counsel to help them challenge their indefinite detention.[1]

---

[1] While Respondents suggest that granting Petitioners' request for telephone access before the Court decides the issue of standing "effectively puts the cart before the horse," (Resp'ts' Reply Memorandum at 10), Petitioners note that Judge Oberdorfer has recently ordered the parties in six pending Guantánamo detainee cases in which the government has challenged petitioners' next friend authorizations to consult with Magistrate Judge Kay to discuss how petitioners' counsel may obtain access to the detainees to determine if they will authorize counsel to represent them directly. *See Shaffiq v. Bush*, C.A. No. 05-1506 (RMC), (dkt. no. 20, filed Nov. 4, 2005).

- 5 -

Granting this modest relief to Petitioners would be minimally burdensome to Respondents but would demonstrably improve the condition of Petitioners' continued confinement. Having determined that Petitioners do not present a threat to anyone, Respondents cannot credibly argue that telephone access is not appropriate here. Accordingly, Petitioners' cross motion for entry of the Protective Order and for telephone access to counsel should be granted.

## II. RESPONDENTS HAVE NOT ARTICULATED A VALID BASIS FOR DENYING PETITIONERS' REQUEST FOR SUBMISSION OF A FACTUAL RETURN

In their opening brief, Petitioners demonstrated that Respondents' alternate request for a stay pending resolution of appeals in *Khalid v. Bush* Nos. 04-CV-1142 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), and *In re Guantánamo Detainee Cases*, No. 02-CV-0299 (CKK), 355 F. Supp. 2d 443 (D.D.C. 2005), should be denied because "[n]either of the twinned cases now pending before the Court of Appeals presents, or appears to have contemplated, the case of a detainee who has been brought through the CSRT process and declared no longer an enemy combatant." *Qassim v. Bush*, 382 F. Supp. 2d 126, 128 (D.D.C. 2005). Respondents now admit that all three Petitioners were exonerated by the CSRTs and determined not to be enemy combatants. Yet they still refuse to consent to Petitioners' modest request for a factual return to the Petition that would include each Petitioner's CSRT file. Respondents suggest that a factual return in this case is unnecessary because they have already admitted that Petitioners are no longer classified as enemy combatants. Resp'ts' Reply Memorandum at 13.

Providing Petitioners access to their CSRT files is both necessary and appropriate in this case and would impose a minimal burden on Respondents. Petitioners have been determined by the CSRTs not to be enemy combatants; nevertheless they have been held virtually *incommunicado* for nearly four years in Guantánamo. They are entitled to know on

KL3:2475433.2

what basis they were initially apprehended, when Respondents reached a determination that they were not enemy combatants and thus how long the government has been unjustifiably detaining them. Furthermore, because Respondents claim that they "plan to effect [Petitioners'] release as soon as practicable," (Resp'ts' Reply Memorandum at 13), and that "efforts are underway…to locate a suitable country for transfer," (Resp'ts' Reply Memorandum at 16), Petitioners are entitled to know precisely what efforts have been made in that regard and what progress has been made towards securing their prompt release. At a minimum, Respondents should allow the Court to review this information *in camera*, relief that has been granted by the court in the case of two other Uighur detainees who have also been determined not to be enemy combatants. *See* Status Conf. Tr. at 17. Put simply, Petitioners would like to know why, after they have been fully exonerated of any wrongdoing, they are still languishing in detention in a military prison. They are entitled to at least that much, and their request for a factual return should be granted.

### III. THE COURT SHOULD ISSUE AN ORDER IN AID OF JURISDICTION BARRING THE TRANSFER OF PETITIONERS FROM GUANTÁNAMO WITHOUT AT LEAST THIRTY DAYS NOTICE

Respondents have opposed Petitioners' request for an in order in aid of jurisdiction barring their transfer from Guantánamo without at least thirty days advance, written notice to Petitioners and their counsel in arguments set forth in Respondents' Memorandum in Opposition to Petitioner's Motion for Preliminary Injunction Requiring Advance Notice of Transfer or Repatriation in *Dad v. Bush*, No. 05-2083 (JDB), ("Dad Memorandum"), which they incorporate by reference. The petitioner in *Dad*, to Petitioners' knowledge, was never determined not to be an enemy combatant, and the relief he sought was a preliminary injunction, rather than the more limited relief Petitioners seek here. Respondents' boilerplate opposition thus ignores the central, dispositive differences between that case and the instant case – namely

KL3:2475433.2

that Petitioners here have been deemed not to be "enemy combatants" and simply request that they be afforded adequate notice of any intended transfer or removal of Petitioners from Guantánamo. Try as Respondents might to mischaracterize the relief requested as "an extraordinary and drastic remedy" (Dad Memorandum at 8), based on "unhinged speculation," (Dad Memorandum at 11), that "would trample on the separation of powers," (Dad Memorandum at 20), Petitioners are simply requesting notification prior to their transfer based on a credible fear that they will be tortured if they are repatriated to China, or to any third country that might subsequently repatriate them to China.

Contrary to Respondents' assertions, Petitioners do not intend this request to interfere with or otherwise prevent their release from Guantánamo. Petitioners merely seek notice of any intended removal to another jurisdiction, whether for continued custody or release, in order to allow a sufficient time frame for Petitioners to consult their counsel and, should they determine the proposed transfer poses a danger to Petitioners' safety, seek a hearing before this Court. Respondents assert a variety of legal arguments as to why it would be improper for any Petitioner to challenge his transfer, even to China, which is acknowledged by the United States to practice torture. These arguments are wholly premature because Petitioners only seek notice to their counsel who, if provided with notice, might well not seek any further Court intervention with respect to any transfer to a country where Petitioners would not credibly fear torture.

Respondents could avoid further litigation here simply by agreeing to provide this Court reasonable notice. This would make abundant sense, given that other judges in this district have ordered Respondents to provide those courts notice with respect to other Guantánamo detainees. *See, e.g., Abdah v. Bush*, Civ. No. 04-1454 (HHK) (RMC), 2005 WL 589812, at *5 (D.D.C. Mar. 12, 2005) (Collyer, J.) (entering a temporary restraining order barring the

- 8 -

KL3:2475433.2

Government from transferring the petitioners before a hearing on their motion); *Al-Marri v. Bush*, Civ. No. 04-2035 (GK), 2005 WL 774843, at *6 (D.D.C. Apr. 4, 2005) (Kessler, J.) (same); *Al-Joudi v. Bush*, Civ. No. 05-301 (GK), 2005 WL 774847, at *6 (D.D.C. Apr. 4, 2005) (Kessler, J.) (same); *Kurnaz v. Bush*, Civ. Nos. 04-1135 (ESH), 05-0392 (ESH), 2005 WL 839542, at *3 (D.D.C. Apr. 12, 2005) (Huvelle, J.) (same). Moreover, if Respondents are correct that as a general matter detainees are not transferred to countries "where the United States believes it is more likely than not that the individual will be tortured," (Dad Memorandum at 6), then Petitioners' request should cause them no great concern.

In light of the potentially substantial harm to Petitioners, the *de minimis* burden on the government, and the extraordinary public interest at issue, Petitioners' application for an order in aid of jurisdiction should be granted, and the Court should order the government to provide at least thirty days advance, written notice of any intended transfer or removal of Petitioners from Guantánamo.

### A. Respondents Have Failed To Provide Any Facts Demonstrating That Advance Notice of Petitioners' Transfer Will Harm The Government Or The Public Interest

By the government's own admission, at least 247 detainees have been transferred from Guantánamo in the past three years, and approximately seventy of these prisoners were transferred to countries where they have been subjected to continued detention. Dad Memorandum at 4, n.4. Counsel for Petitioners seek only the opportunity to ascertain whether any proposed transfer would subject Petitioners to torture elsewhere.[2]

Moreover, the risk that Petitioners will be tortured if they are transferred from Guantánamo to Chinese custody or to any country that might subsequently repatriate them to

---

[2] Respondents' position that, under the Convention Against Torture, a transfer is appropriate if a detainee faces only 50% or lesser risk of torture offers little comfort to Petitioners.

China is credible and real. Although the U.S. government has found that Petitioners are not enemy combatants and do not threaten the security of the United States or its allies, the Chinese government has specifically demanded that the United States return the Uighurs in Guantánamo to China to face charges of terrorism. Petition, ¶ 45. Petitioners were also interrogated by Chinese government agents while in the custody of the United States at Guantánamo, and were subjected to threats and "stress and duress" techniques such as sleep deprivation, forced sitting for hours and "environmental manipulation" such as exposure to extreme heat or cold. Petition, ¶ 31.

### B. The Court Is Clearly Empowered To Enter The Requested Relief

The Court has the power to maintain jurisdiction over this case and require Respondents to provide notice prior to any transfer, and Respondents have not demonstrated otherwise. Respondents have claimed repeatedly that the Court has no power to oversee the treatment of detainees at Guantánamo. Despite a Supreme Court ruling to the contrary, *see Rasul v. Bush*, 124 S. Ct. 2686 (2004), Respondents continue to conduct themselves as if Petitioners have no rights cognizable in this Court. They are wrong, and their attempt to evade the clear directive of the Supreme Court should be rejected.

As the Supreme Court held in *Padilla v. Rumsfeld*, 124 S. Ct. 2711, 2721 (2004), "when the government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." (citing *Ex Parte Endo*, 323 U.S. 283 (1944)). Nonetheless, the practical difficulties this Court would face if forced to consider Petitioners' claims while they are languishing in a Chinese prison presents reason enough for the Court to issue an order in aid of jurisdiction requiring prior notice any intended transfer.

In addition, Respondents incorrectly assert that Petitioners have no reason to contest a future transfer "other than to be able to test the legitimacy of detention the Executive is no longer interested in maintaining." Dad Memorandum at 10. Again, Respondents misconstrue Petitioners' position. Petitioners do not seek to prevent the United States from negotiating their release. The present issue is solely whether notice should be provided to the Court and counsel, as a transfer to an inappropriate country may not only endanger Petitioners' welfare, but may also lead to their continued detention. Respondents assert that such detention is the decision of the receiving nation, and likens this situation to extradition. This could not be farther from the truth. Petitioners in this case have been exonerated of any wrongdoing and have challenged the lawfulness of their ongoing detention by the United States. This very detention, however, has meant that individuals released from Guantánamo suffer the collateral consequences of being suspected of having terrorist affiliations – regardless of whether such allegations are true – resulting in likely detention and further interrogation. Similarly, Respondents incorrectly claim that issues of foreign policy are beyond the reach of the Court. Dad Memorandum at 17-18. Where the government's policy infringes upon the due process and other rights of persons held in United States custody, the Court can and must intervene to protect those rights. Respondents' claim that the Court has no power to oversee its prolonged, unjustified detention of Petitioners is squarely in conflict with the Supreme Court's ruling in *Rasul*.

An order, solely to afford Petitioner an opportunity to be heard, is the most limited, and appropriate, remedy. Without it, the government may continue to outsource torture without affording Petitioners the simple right to appear before this Court – a right they have waited to exercise for nearly four years.

## Conclusion

For all of these reasons, we respectfully request that the Court grant Petitioners' cross motion for an Order: (i) granting expedited entry of the Protective Order; (ii) ordering Respondents to submit a factual return to the Petition as well as each Petitioner's CSRT file; (iii) granting Petitioners immediate access to undersigned counsel by telephone; and (iv) barring Petitioners' transfer from Guantanamo Bay Naval Station without at least thirty days advance, written notice to Petitioners and their counsel.

Dated:    New York, New York
          November 7, 2005

                                            Respectfully submitted,

Counsel for Petitioners:

/s/ Paul Schoeman
Paul Schoeman (Pursuant to LCvR 83.2(g))
J. Wells Dixon (Pursuant to LCvR 83.2(g))
Joel Taylor (Pursuant to LCvR 83.2(g))
Alison Sclater (Pursuant to LCvR 83.2(g))
Michael J. Sternhell (Pursuant to LCvR 83.2(g))
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Tel:  (212) 715-9100
Fax:  (212) 715-8000

Barbara Olshansky (NY-0057)
Tina Monshipour Foster (Pursuant to LCvR 83.2(g))
Gitanjali S. Gutierrez (Pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel:  (212) 614-6439
Fax:  (212) 614-6499