*Approved for Public Filing*
*by the CSO*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————— x
                                    :
AYOUB HAJI MAMET, *et al.*,          :
                                    :
                Petitioners,        :
                                    :
        v.                          :
                                    :
GEORGE W. BUSH, *et al.*,            :
                                    :
                Respondents.        :
                                    :
———————————————— x

**ORAL ARGUMENT REQUESTED**

Civil Action No. 1:05 CV 01886 (EGS)

## PETITIONERS' RESPONSE TO ORDER TO SHOW CAUSE WHY PETITION FOR HABEAS CORPUS SHOULD NOT BE DISMISSED

*Approved for Public Filing*
*by the CSO*

Petitioners Ayoub Haji Mamet, Ahmad Doe, and Aktar Doe (collectively, "Petitioners"), by and through their undersigned counsel, hereby respond to the Court's Order to Show Cause why their petition for habeas corpus and complaint seeking declaratory, injunctive, and other relief (the "Petition") should not be dismissed in light of their release from the custody of the United States and transfer to Albania on May 5, 2006. Petitioners oppose dismissal of the Petition.

The Petition asserts eighteen causes of action under the U.S. Constitution, the Alien Tort Statute, the Geneva Conventions, customary international humanitarian and human rights law, the Administrative Procedures Act, the Convention Against Torture, the Third and Fourth Geneva Conventions, the 1954 Convention Relating to the Status of Refugees, and the Declaratory Judgment Act. The causes of action seek (in certain cases) habeas relief and (in all cases) declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

Because they have been released from U.S. custody, Petitioners no longer seek habeas, declaratory, or injunctive relief. Petitioners continue to seek monetary damages, however, as part of the appropriate relief to which they are entitled under several of the causes of action asserted in the Petition. They therefore oppose dismissal and respectfully request that the Court grant them leave to amend the Petition on or before October 30, 2006 so that they may withdraw their claims for habeas, declaratory, and injunctive relief, and elaborate the bases for their damages claims. In another case in which a detainee has been released from Guantánamo, the court has permitted the petitioner to proceed in an action for damages on similar grounds. *See* Minute Order, *Al Rashaidan v. Bush*, No. 05 CV 00586 (RWR) (July 5, 2006) (discharging

*Approved for Public Filing*
*by the CSO*

petitioners of obligation to show cause why petition should not be dismissed in light of release from U.S. custody, following petitioner's assertion (Response to Court's Order to Show Cause, dkt. no. 30) that the "appropriate" relief requested in his petition included damages claims that had not been mooted by his release). In Petitioners' case, Petitioners request that they be given until October 30 to amend their petition, as they will be represented by new counsel with respect to their claims for monetary relief.

## BACKGROUND

Petitioners are Uighurs, a Turkic Muslim minority group native to western China, whom Respondents long ago determined are not "enemy combatants." Petitioners fled China to escape religious and political persecution and were residing in a community of similarly situated Uighurs in the mountains of Afghanistan when the United States commenced military operations in that country in October 2001 (Petition ¶ 13). After their village was bombarded by the U.S. military, Petitioners fled the escalating hostilities with a group of thirteen other Uighurs over the nearby border with Pakistan. *See* Andrew Higgins, *Free and Uneasy, Tale of 5 Muslims: Out of Guantánamo And Into Limbo*, Wall Street Journal, A1, June 2, 2006. Initially befriended by local Pakistani tribesmen, Petitioners were later betrayed, kidnapped and sold to United States forces for $5,000 each. *Id.* Petitioners were first taken to Kandahar, Afghanistan and later to the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo") where they were held virtually *incommunicado* for the next four years without basis, without charge, and without being afforded any fair process by which they might challenge their detention.

On June 28, 2004, the Supreme Court held that prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts through

*Approved for Public Filing*
*by the CSO*

petitions for habeas corpus and are also entitled to challenge the conditions of their confinement under the Alien Tort Statute. *See Rasul v. Bush*, 542 U.S. 466, 483-84 (2004). Within days of this decision, then Deputy Secretary of State Paul Wolfowitz established the Combatant Status Review Tribunals ("CSRTs"), and charged the CSRTs with making individual determinations as to whether each detainee was an "enemy combatant" and could therefore be detained pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (Nov. 13, 2001). Rather than provide detainees with a meaningful opportunity to challenge their detention, however, the CSRTs simply sought to confirm their prior "designation[s] as . . . enemy combatant[s]" made "through multiple levels of review by officers of the Department of Defense." *See* Memorandum for the Secretary of the Navy, Order Establishing Combatant Status Review Tribunals (July 7, 2004). The CSRTs are made up of three military officers and do not afford detainees who appear before them the right to counsel or the opportunity to review the evidence against them. Despite these procedural infirmities, in May 2005 Petitioners and two other Uighur detainees with whom they were captured, Abu Bakker Qassim and Adel Abdu Al-Hakim, were notified that the CSRTs had determined that they were "no longer enemy combatants" (NLECs).[1] Nevertheless, their detention continued.

On September 23, 2005, the instant Petition was filed through Petitioners' Next Friends, Adel Abdul Hakim and Usama Hasan Abu Kabir. The Petition alleges that Petitioners did not participate in armed conflict against the United States at any point in time, are not and

---

[1]     As Judge Robertson observed when considering the habeas petition brought on behalf of Messrs. Qassim and Abdu Al-Hakim, "[t]he government's use of the Kafkaesque term 'no longer enemy combatants' deliberately begs the question of whether these petitioners ever were enemy combatants." *Qassim v. Bush*, 407 F. Supp. 2d 198, 200 (D.D.C. 2005).

*Approved for Public Filing*
*by the CSO*

have never been members of Al Qaeda or any other terrorist group, did not commit any violent act against any American person or espouse any violent act against any American person or property, and had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001 or any act of international terrorism attributed by the United States to Al Qaeda or any other terrorist group. (Petition ¶ 21). Petitioners further alleged that they were therefore not properly subject to the detention order by President Bush or subject to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or under the Joint Resolution 23, Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (Jan. 18, 2001), which authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." (Petition ¶¶ 20-21). The Petition additionally states that Petitioners were illegally incarcerated in Guantánamo for many years, during which time they were denied fundamental rights of due process, and subjected to cruel, inhuman and degrading treatment or punishment in violation of the Constitution, laws, and treaties of the United States, and international law. (Petition ¶ 33). Based on these violations, the Petition includes eighteen causes of action, requesting habeas, injunctive, declaratory, and any other relief the Court may deem appropriate. Petitioners assert they are entitled to this relief under, *inter alia*, the Due Process Clause, the Alien Torts Statute, the Administrative Procedures Act ("APA"), and the Geneva Conventions.[2]

---

[2] The First, Second, Third and Fourth Claims asserted in the Petition allege violations of common law and constitutional due process and violations of international law, including Petitioners' illegal incarceration by Respondents and unlawful conditions of confinement. All four counts request declaratory and injunctive and all other appropriate relief. Three of these counts also request habeas relief. The Fifth, Sixth, Seventh, Eighth, Ninth and Seventeenth Claims are made pursuant to the Alien Tort Statute, 28 U.S.C. §1350, and request relief to be determined at trial as well as habeas, declaratory and injunctive relief. The Fifth Claim alleges

- 4 -

*Approved for Public Filing*
*by the CSO*

On October 4, 2005, Respondents moved to dismiss the Petition, arguing that it was not validly authorized by Petitioners' next friends. Respondents also argued in the alternative that the case should be stayed pending resolution of appeals in *Khalid v. Bush*, Nos. 04-CV-1142 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), and *In re Guantánamo Detainee Cases*, No. 02-CV-0299 (CKK), 355 F. Supp. 2d 443 (D.D.C. 2005). Petitioners opposed Respondents' motion and cross moved for expedited entry of the Amended Protective Order, a factual return to the Petition, immediate access to their counsel by telephone, and an order barring their transfer from Guantánamo without at least thirty-days' advanced, written notice to Petitioners and their counsel.

In their reply to Petitioners opposition and related cross motion, Respondents acknowledged that "[a]ll three of the detainees have been determined to be . . . NLECs" (dkt. no. 11, at 3) and claimed that they "plan[ned] to effect their release as soon as practicable" (*Id.* at 13). Nevertheless, Respondents still refused to proffer a factual return to the Petition. (*Id.*). On

---

torture; the Sixth, war crimes; the Seventh, cruel, inhuman or degrading treatment; the Eighth, arbitrary arrest and prolonged arbitrary detention; the Ninth, enforced disappearance. The Tenth Claim also alleges unlawful detention in violation of Article II of the Constitution and seeks habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate. (Petition ¶¶ 47-88).

The Eleventh, Twelfth and Thirteenth causes of action set forth claims under the Administrative Procedures Act, for which Petitioners seek habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate. These counts allege arbitrary and capricious detention, arbitrary and capricious denial of due process and torture, all in violation of governing administrative regulations and the Administrative Procedure Act. 5 U.S.C. § 500, et. seq. The Fourteenth and Fifteenth Claims assert additional constitutional violations and seek habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate. The Sixteenth Claim alleges violations of the Convention Against Torture, the Third and Fourth Geneva Conventions, and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 (entered into force Apr. 22, 1954), and seeks declaratory and injunctive relief, as well as any other relief the Court may deem appropriate. (Petition ¶¶ 89-108). The Nineteenth Claim is made pursuant to the Declaratory Judgment Act and seeks a declaratory judgment that the Executive Order of November 13, 2001, is *ultra vires* and unlawful as applied to Petitioners. (Petition ¶¶ 89-115).

*Approved for Public Filing
by the CSO*

December 16, 2005, Petitioners' counsel notified the Court of their receipt of unclassified letters from Petitioners confirming their desire for legal representation in challenging the legality of their detention. On December 30, 2005, Respondents finally abandoned their motion to dismiss, conceding that the Petition was validly authorized, but continued to urge the Court to stay the case. On January 9, 2006, the Court entered the Amended Protective Order, which permitted Petitioners to meet with their counsel for the first time, on March 13, 2006.

On May 5, 2006, Respondents filed a notice of transfer informing Petitioners' counsel that Petitioners had been released from the custody of the United States and sent to Albania. Petitioners, along with Messrs. Qassim and Abdu Al-Hakim, were loaded onto a U.S. military transport plane, shackled to the floor, and flown to Tirana, Albania, where they have been living in a refugee center operated by the Albanian government ever since. *See* Neil A. Lewis, *Freed from Guantánamo but Stranded far From Home*, NYT, Aug. 15, 2006. Respondents provided no advance notice to counsel of this impending release and transfer, which occurred on the last business day before the Court of Appeals was scheduled to hear oral argument in *Qassim v. Bush*, No. 05-5477 (D.C. Cir.).[3]

While they have been released from U.S. custody, Petitioners continue to seek redress – in the form of monetary damages – of the injuries they have suffered as a result of their

---

[3]    The *Qassim* petitioners (Messrs. Qassim and Abdu Al-Hakim) were kidnapped with Petitioners herein by the same Pakistani bounty hunters and were also found to be NLECs. On December 22, 2005, Judge Robertson had found that "their continued detention for nine months after the CSRT had concluded they were NLEC's" was "indefinite" and "unlawful." *Qassim*, 407 F. Supp. 2d at 201. Nonetheless, Judge Robertson held that the court was powerless to order that the Executive release them in the United States because such an order "would have national security and diplomatic implications beyond the competence or the authority of this Court." *Id.* at 203. The appeal brought by Qassim and Abdu Al-Hakim sought their release into the United States.

- 6 -

*Approved for Public Filing*
*by the CSO*

illegal and prolonged detention by Respondents in violation of the laws and treaties of the United States. The claims asserted in their petition entitle Petitioners to this relief; and because the Court's jurisdiction over these claims has not been mooted by Petitioners' release, the Petition should not be dismissed.

## ARGUMENT

### CLAIMS IN THE PETITION ENTITLING PETITIONERS TO MONETARY DAMAGES HAVE NOT BEEN MOOTED BY PETITIONERS' RELEASE FROM U.S. CUSTODY

A case becomes moot only when it is "impossible for the court to 'grant any effectual relief whatever' to a prevailing party." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). "[So] long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Ellis v. Brotherhood of Railway, Airline & Steamship Clerks*, 466 U.S. 435, 442 (1984). The burden of demonstrating mootness "is a heavy one," *see United States v. W. T. Grant Co.*, 345 U.S. 629, 632-33 (1953); *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998), and is particularly "stringent" where a case has been mooted by the voluntary conduct of a party, *see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000); *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968); *United States v. Trans-Missouri Freight Ass'n*, 166 U.S. 290, 309-10 (1897).

The mooting of one issue in a case does not moot the entire action, even if the plaintiff's primary injury has been redressed. *See University of Texas v. Camenisch*, 451 U.S. 390, 394 (1981) ("this, then, is simply another instance in which one issue in a case has become moot, but the entire case as a whole remains alive because other issues have not become moot.");

- 7 -

*Approved for Public Filing
by the CSO*

*see also Fulton Corp. v. Faulkner*, 516 U.S. 325, 327 n. 1 (1996) (repeal of state tax did not moot refund action for years when the tax was in effect); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 370-71 (1982) (case not moot because plaintiffs would be entitled to $400 damages if defendants were found liable); *Powell v. McCormack*, 395 U.S. 486, 495-500 (1969) (plaintiff's right to injunctive relief to test the validity of his ouster from the House of Representatives was mooted by his reelection, but his right to present the issue on his claim to recover his lost salary was not moot). Thus, a complaint seeking monetary damages is not rendered moot simply because it also seeks equitable or declaratory relief that is no longer available or relevant. *See Deakins v. Monaghan*, 484 U.S. 193, 201 (1988) (conclusion that claim for equitable relief in 42 U.S.C. § 1983 action was moot did not preclude consideration of propriety of district court's dismissal of related claims under state and federal law for monetary relief); *Board of Pardons v. Allen*, 482 U.S. 369, 371 n.1 (1987) (suit still justiciable where plaintiffs asserted non-frivolous claim for compensatory damages, even if equitable and declaratory claims were mooted by plaintiffs' release on parole); E. Chemerinsky, *Federal Jurisdiction* § 2.5.2 at 132 (4th ed. 2003) ("[A] plaintiff seeking both injunctive relief and money damages can continue to pursue his case, even after the request for an equitable remedy is rendered moot."). This is true even where "[t]he amount [of damages] at issue is undeniably minute." *Ellis v. Railroad Clerks*, 466 U.S. 435, 442 (1984).

Although the habeas, equitable, and declaratory relief sought by the Petition may no longer be available in light of Petitioners' transfer to Albania, this Court still has jurisdiction over claims for monetary damages included in the Petition. *See Anyanwutaki v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998); *Scott v. District of Columbia*, 139 F.3d 940, 941 (D.C. Cir.), *cert. denied*, 525 U.S. 851 (1998). Petitioners have requested all appropriate relief under, *inter alia*,

- 8 -

*Approved for Public Filing*
*by the CSO*

the Due Process Clause (Petition ¶¶ 51, 54), the Alien Torts Statute (Petition ¶¶ 67, 70, 75, 79, 82), and the APA (Petition ¶¶ 93, 96, 99). Monetary damages are available for suits brought under each of these provisions, and are, Petitioners submit, appropriate under the circumstances of this case. Petitioners therefore respectfully request that the Court allow them to amend the Petition so that they may further elaborate the bases for the damages claims currently in the Petition, and to withdraw their claims for habeas, equitable, and declaratory relief. Petitioners respectfully request that they be given until October 30 to file their amended pleading, in order to give new counsel, who will be appearing for petitioners, adequate time to become familiar with the case.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully oppose dismissal of the Petition and request that the Court grant Petitioners leave to amend the Petition.

Dated:     New York, New York
           September 28, 2006

                              Respectfully submitted,

                              Counsel for Petitioners:

                              /s/ Paul Schoeman
                              Paul Schoeman (Pursuant to LCvR 83.2(g))
                              Joel Taylor (Pursuant to LCvR 83.2(g))
                              Michael J. Sternhell (Pursuant to LCvR 83.2(g))
                              Darren LaVerne (Pursuant to LCvR 83.2(g))
                              KRAMER LEVIN NAFTALIS & FRANKEL LLP
                              1177 Avenue of the Americas
                              New York, New York 10036
                              Tel: (212) 715-9100
                              Fax: (212) 715-8000

                              - and -

                              Barbara Olshansky (NY-0057)
                              Gitanjali S. Gutierrez (Pursuant to LCvR 83.2(g))

*Approved for Public Filing*
*by the CSO*

J. Wells Dixon (Pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel:  (212) 614-6439
Fax:  (212) 614-6499

- and -

Alison Sclater (Pursuant to LCvR 83.2(g))
245 East 80th Street, #9J
New York, New York 10021
Tel:  (212) 717-2736

KL3:2544072.2